[Cite as *State ex rel. Bates v. Pub. Emps. Retirement Bd.*, 2014-Ohio-1183.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Marylou Altman-Bates et al., | : | |
| Relators, | : | |
| v. | : | No. 11AP-196 |
| Public Employees Retirement Board and Franklin County Commissioners, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

## D E C I S I O N

### Rendered on March 25, 2014

*John H. Bates,* for Marylou Altman-Bates.

*Amy Neyerlin,* pro se.

*Rebecca Steele,* pro se.

*Melani Anderson,* pro se.

*Michael DeWine*, Attorney General, and *Matthew T. Green,* for Ohio Public Employees Retirement Board.

*Ron O'Brien*, Prosecuting Attorney, *Nick A. Soulas, Jr.*, and *Denise L. DePalma*, for Franklin County Commissioners.

### IN MANDAMUS
### ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relators, Marylou Altman-Bates, Amy Neyerlin, Rebecca Steele, and Melani Anderson, four Franklin County Assistant Public Defenders, hired between January 1,

1985 and December 31, 1998, have filed this original action requesting that this court issue a writ of mandamus ordering respondent, Public Employees Retirement Board ("PERB"), to vacate its determination that relators were not public employees and thus were not entitled to membership status and service credit during the tenure of their employment under the Public Employees Retirement System ("PERS"). Relators also request that the writ compel respondent, Franklin County Board of Commissioners ("Commissioners"), to remit employer and employee contributions to PERB on behalf of relators for the relevant period.

{¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny relators' request for a writ of mandamus. All four relators filed objections to the magistrate's decision, and respondents filed memoranda in opposition to relators' objections. Accordingly, this matter is now before this court for a full, independent review.

{¶ 3} Analysis of relators' claims requires an overview of pertinent background facts, legislative history, and case law. In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defenders Act, which established the Ohio Public Defender Commission and authorized counties to create county and joint county public defender commissions. In accordance with R.C. 120.13(A), the Commissioners established the Franklin County Public Defenders Commission ("the FCPDC") to provide legal representation to indigent criminal defendants. Pursuant to R.C. 120.14, the FCPDC appointed attorney James Kura as the Franklin County Public Defender, and Kura hired attorneys and support personnel to form the Franklin County Public Defender's Office ("the FCPDO"). The FCPDO operated as if it were a private, unincorporated association, and both the FCPDO, as an employer, and its employees paid Social Security taxes on their wages.

{¶ 4} In 1984, the General Assembly enacted R.C. 120.14(F), which authorized county and joint county public defender commissions to contract with nonprofit organizations to provide legal representation to indigent criminal defendants. Under the authority of R.C. 120.14(F), the FCPDO was incorporated as a nonprofit corporation ("the

FCPDO Nonprofit") on December 31, 1984, when its Articles of Incorporation were filed with the Ohio Secretary of State.[1] The Articles of Incorporation named the FCPDC as the sole member of the corporation, and the five individual members of the FCPDC were appointed as trustees. The FCPDC then contracted with the Commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County and the city of Columbus, and the FCPDC subcontracted with the FCPDO Nonprofit to provide such services.

{¶ 5} Beginning January 1, 1999, respondents treated FCPDO Nonprofit employees as public employees and enrolled them in PERS. At the same time, Social Security contributions ceased.

{¶ 6} The present case is the latest of several concerning the employment status of individuals employed by the FCPDO (in operation from 1976-1980) and the FCPDO Nonprofit (in operation from 1985-1999). Because decisions of the Supreme Court of Ohio in previous cases bear upon the present case, we discuss them at some length.

{¶ 7} In the first of these cases, *State ex rel. Mallory v. Public Emp. Retirement Bd.,* 82 Ohio St.3d 235 (1998), the Supreme Court granted a writ of mandamus ordering PERB to credit Mallory, a former employee of both the FCPDO and the FCPDO Nonprofit, with her years of service as a law clerk from 1978 to 1980 and an attorney from 1982 to 1994. With regard to Mallory's pre-1984 employment status, the court noted that "the [FCPDC] was established and Kura was appointed as the Franklin County Public Defender pursuant to the Public Defender Act of 1976" and that "[b]oth the [FCPDC] and Kura exercised powers and duties pursuant to the Public Defender Act to comply with the governmental duty to provide assistance of counsel to indigent criminal defendants." *Id.* at 240-41. The court held that, prior to the incorporation the FCPDO Nonprofit in 1984, the FCPDO employees were public employees under R.C. 145.01(A): "[P]re-1984 FCPDO employees like [Mallory] were public employees during their employment with the

---

[1] The Articles of Incorporation listed the corporate name as the Franklin County Public Defender. This creates confusion because there were two entities with the same name—one an individual (and public official) and the other a corporation. In order to mitigate this confusion, we use the abbreviations "FCPDO" and "FCPDO Nonprofit" to differentiate the pre-incorporated Franklin County Public Defender in operation from 1976-1984 from the post-incorporated Franklin County Public Defender in operation from 1985-1988. For purposes of continuity and clarity, these abbreviations, as well as those previously set forth for the FCPDC and the Commissioners have been incorporated into the previous court decisions rendered in the lengthy litigation history concerning whether employees of the FCPDO Nonprofit qualified as public employees pursuant to R.C. 145.01.

FCPDO. Pursuant to statutory authority, FCPDO employees were employed by a county agency [the FCPDC] and a county officer (Franklin County Public Defender Kura) to perform a governmental function, *i.e.,* the function of providing legal representation to indigent criminal defendants, for which FCPDO employees were paid by the county." *Id.* at 241.

{¶ 8}   The Supreme Court went on to reject this court's conclusion that Mallory was not a public employee because Franklin County Public Defender Kura, even prior to the passage of R.C. 120.14(F) in 1984, had the authority to contract, and in fact had contracted, with a private program (the FCPDO) to provide indigent legal representation. In so doing, the court first noted that the record was devoid of any evidence of a contract, written or oral, between Kura and the FCPDO. The court further found that any such contract would have been invalid under R.C. 2921.42(A), which prohibits a public official from having an unlawful interest in a public contract. The court stated that "[i]n concluding that Kura had contracted with a private organization known as the FCPDO, the court of appeals neglected to consider that a clear conflict of interest would have existed if Kura, acting in his official capacity as the Franklin County Public Defender, was permitted to determine the adequacy of services provided to the county by the 'private agency' Kura himself directed." *Id.* at 242.

{¶ 9}   Finally, the Supreme Court addressed whether the 1984 enactment of R.C 120.14(F), the incorporation of the FCPDO Nonprofit, and the contractual relationship between the FCPDC and the FCPDO Nonprofit terminated Mallory's continued membership in PERS. The court concluded that it did not, stating that an FCPDO attorney who continued to represent indigent criminal defendants after the incorporation of the FCPDO Nonprofit was entitled to continuing service credit with PERS under R.C. 145.01(A)(2). *Id.* at 245. R.C. 145.01(A)(2), colloquially referred to as the "carryover" provision, defines a "public employee" as "[a] person who is a member of [PERS] and who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of the contract was a publicly operated function."

{¶ 10} The Supreme Court next addressed the status of FCPDO and FCPDO Nonprofit employees as public employees in *State ex rel. Van Dyke v. Public Emp.*

*Retirement Bd.,* 99 Ohio St.3d 430, 2003-Ohio-4123. Beginning in 1982, Van Dyke worked for the FCPDO, first as a legal intern and then as a staff attorney. In 1985, after the enactment of R.C. 120.14(F) and the incorporation of the FCPDO Nonprofit, Van Dyke resigned her position and began working as a staff attorney in the Bureau of Support in the Franklin County Court of Common Pleas, Division of Domestic Relations. In 1986, Van Dyke resigned her position with the bureau of support and was rehired as a staff attorney with the FCPDO Nonprofit, where she worked until 1991.

{¶ 11} Following the Supreme Court's decision in *Mallory,* PERB credited Van Dyke with her years of service with the FCPDO from February 1982 to November 1985 but refused to credit her for her employment with the FCPDO Nonprofit from 1986 to 1991. Agreeing with PERB, the Supreme Court rejected Van Dyke's claim that she was entitled to PERS credit for employment with the FCPDO Nonprofit because she was a "carryover" employee under R.C. 145.01(A)(2). The court concluded that when Van Dyke "was reemployed by FCPDO [Nonprofit] in April 1986, she was not 'continuing' her employment with a private contractor that was taking over a previously publicly operated function. Instead, in April 1986, she was beginning a term of employment with a private contractor that years before had taken over the publicly operated function." *Id.* at ¶ 29. The court further averred that Van Dyke "did not continu[e] in an unbroken chain of service as an attorney for the county * * * when she returned to the FCPDO [Nonprofit] and resumed her duties as a staff attorney. Rather, when she began her second period of employment with FCPDO, it was no longer a county agency." *Id.* at ¶ 30.

{¶ 12} The present dispute began in 2001, when 51 present and former Franklin County Assistant Public Defenders and support personnel, including relators, hired between January 1, 1985 and December 31, 1998, sought a PERB determination that they were public employees eligible for PERS membership and service credit during the specified period. The claimants contended that the incorporation of the FCPDO into the FCPDO Nonprofit did not effectuate private employment for claimants as intended. Claimants maintained that the FCPDO Nonprofit was in fact a public employer under R.C. 145.01(D) rather than a private contractor, and that they were public employees entitled to PERS membership. Claimants specifically alleged that, because the FCPDC was the sole member of the FCPDO Nonprofit and FCPDC members were the trustees, the FCPDC

retained sole authority to conduct the affairs of the FCPDO Nonprofit, and, accordingly, the FCPDO Nonprofit was merely the "alter ego" of the FCPDC.

{¶ 13} PERS staff determined that the Supreme Court's holding in *Van Dyke* precluded the claimants' claims.  Upon appeal to PERB, the claimants advanced arguments concerning agency, control, alter ego, lack of separate mind, will or existence of its own, and piercing the corporate veil in an attempt to establish that because of the control exerted by the Commissioners and the FCPDC over the FCPDO Nonprofit, the purported private corporation, i.e., the FCPDO Nonprofit, remained a public employer.

{¶ 14} Based upon the *Van Dyke* court's characterization of the FCPDO Nonprofit as a "private contractor," the PERB hearing examiner determined that the doctrine of collateral estoppel precluded relitigation of the status of the FCPDO Nonprofit during the post-1984 time period.  Accordingly, the hearing examiner did not address the claimants' arguments or evidence regarding the purported control exerted by the Commissioners and the FCPDC over the FCPDO Nonprofit.  The hearing examiner concluded that, during the post-1984 time period, the FCPDO Nonprofit was not a public employer and the claimants were not public employees.  PERB accepted the hearing examiner's recommendation and denied the claimants' request for PERS service credit for the period from January 1, 1985 through December 31, 1998.

{¶ 15} Upon the claimants' request for a writ of mandamus, the Supreme Court determined that "PERB abused its discretion by ruling that our previous decision in *Van Dyke * * ** collaterally estopped [the claimants] from raising their claims for service credit." *State v. ex rel. Davis v. Pub. Emps. Retirement Bd.,* 120 Ohio St.3d 386, 2008-Ohio-6254, ¶ 44.  In so finding, the court averred that both of the previous cases concerning PERS service credit of FCPDO and FCPDO Nonprofit employees, i.e., *Mallory* and *Van Dyke*, involved claims based upon the carryover provision of R.C. 145.01(A)(2), and that "[i]n neither case did the claimants raise the issue that [the claimants] do here— that even after FCPDO was incorporated as a nonprofit organization on December 31, 1984, it remained a public employer because of the county's control of FCPDO.  That is, because the issue of the postincorporation status of FCPDO was not contested by the claimants in *Mallory* or *Van Dyke,* we did not actually litigate or determine the issue." *Id.* at ¶ 33.  As a result, the court granted the claimants a limited writ of mandamus ordering

PERB to vacate its order denying claims for PERS service credit and to issue a new order adjudicating the merits of their claims. *Id.* at ¶ 44.

{¶ 16} Proceedings upon remand commenced in January 2009. On February 26, 2009, PERB issued a journal entry notifying the claimants[2] that evidence and arguments concerning the merits of their claims would be heard before a PERB hearing examiner commencing on July 20, 2009. The entry expressly stated that each of the 51 claimants was entitled to appear and be heard in support of his or her respective claim. The entry also set forth in detail the procedures for the presentation of evidence and the order of the hearing. These procedures included the opportunity for both direct and cross-examination of and by each of the 51 claimants. The entry also provided that any claimant could file written objections to, or move for clarification or correction of, the procedural orders. Via correspondence dated March 3, 2009, all four relators were provided copies of this entry.

{¶ 17} On June 15, 2009, the hearing examiner issued a journal entry that included modifications to the February 26, 2009 scheduling entry. The order characterized the July 2009 hearing as an opportunity for the parties to supplement the record following the evidentiary hearing before PERB in April 2004. The entry further indicated that all testimony at the July 2009 hearing would be presented through deposition or affidavit, and all deposition testimony would be subject to cross-examination by any party, at any time. The entry reiterated that any claimant could file written objections to, or move for clarification or correction of, the procedural orders.

{¶ 18} On July 9, 2009, the hearing examiner issued another journal entry, reiterating the foregoing procedural orders and notifying the parties that he would not be present at the hearing. The entry set forth the procedures for the presentation of the deposition testimony, including procedures regarding preservation of objections to questions presented.

{¶ 19} Following the hearing, the hearing examiner, on November 30, 2009, issued a 49-page report and recommendation, which included findings of fact and conclusions of law. At the outset, the hearing examiner averred that whether the

---

[2] Sometime after the remand, the law firm who had been representing all 51 claimants ceased representing all but 12 of the claimants. Relators in the present action were not part of that group of 12. Altman-Bates and Neyerlin retained new counsel, and Steele and Anderson proceeded pro se.

claimants were public employees under R.C. Chapter 145 turned primarily upon whether their employer was a public employer during the relevant time period and that the claimants had the burden of proving the public nature of their employer by a preponderance of the evidence. The hearing examiner stated that determination of the employer's status as public or private involved consideration of the legal consequences of having the FCPDO Nonprofit be subject to direction by both the FCPDC and the Commissioners.

{¶ 20} The hearing examiner acknowledged the claimants' two overarching assertions: (1) that because the FCPDC has the statutory obligation to provide public defender services (under R.C. 120.14(F)) and exercised control over the operation of the FCPDO Nonprofit's activities, the FCPDC and the Commissioners were actually the claimants' employers, and (2) that the FCPDC's decision to establish the FCPDO Nonprofit led to adverse consequences—the creation of two classes of employees within the same office (those whose service predated the creation of the FCPDO Nonprofit in 1984 and who benefitted from the decisions in *Mallory* and *Van Dyke* and those who were hired after creation of the FCPDO Nonprofit and were unaffected by the *Mallory* and *Van Dyke* decisions)—that PERB was now required to mitigate.

{¶ 21} As to the first of claimants' assertions, the hearing examiner set forth a detailed summary of the affidavit and deposition evidence presented, including appended exhibits, regarding the creation and operation of the FCPDO Nonprofit and the degree of control exerted over the FCPDO Nonprofit by members of the FCPDC. From this evidence, the hearing examiner concluded that, from January 1, 1985 through December 31, 1998, the FCPDO Nonprofit was a private nonprofit corporation and that the claimants failed to establish that either the Commissioners or the FCPDC had exercised control over the FCPDO Nonprofit "that was so complete that the non-profit corporation had no separate mind, will, or existence of its own." (Report and Recommendation, 46.) Accordingly, the hearing examiner determined that the claimants were not public employees as they were not working for a public employer (either the FCPDC or the Commissioners) during the relevant time period. The hearing examiner instead found that "the [c]laimants' employer was a non-profit corporation authorized to provide public defender services, including legal representation to indigent persons,

authorized by and created pursuant to O.R.C. 120.14(F)." (Report and Recommendation, 46.) As to the claimants' second assertion, the hearing examiner determined that PERB was without authority under R.C. Chapter 145 to correct the inequity created by the decision to operate the public defender's office as a non-profit corporation and cease PERS participation from 1985 to 1998.

{¶ 22} Several of the claimants, including relators Altman-Bates, Steele, and Neyerlin, filed objections to the hearing examiner's report and recommendation. The matter came before PERB on March 17, 2010. Following discussion, PERB voted to accept the hearing examiner's report and recommendation. By letter dated March 22, 2010, PERB notified the claimants, including relators, of its decision. Thus, the claimants' requests for PERS service credit were denied by a final administrative decision of PERB.

{¶ 23} Relators filed the present mandamus action on March 1, 2011.[3] Following briefing and oral argument, the magistrate issued a decision recommending that this court deny relators' request for a writ of mandamus to compel PERB to vacate its decision that they were not public employees and, thus, were not entitled to PERS service credit for the time period from January 1, 1985 through December 31, 1998, and to compel the Commissioners to remit employer and employee contributions to PERB on behalf of relators for that time period.

{¶ 24} " '[M]andamus is an appropriate remedy where no statutory right of appeal is available to correct an abuse of discretion by an administrative body.' " *State ex rel. Lucas Cty. Bd. of Mental Retardation & Dev. Disabilities v. Pub. Emps. Retirement Bd.,* 123 Ohio St.3d 146, 2009-Ohio-4694, ¶ 15, quoting *State ex rel. Pipoly v. State Teachers Retirement Sys.,* 95 Ohio St.3d 327, 2002-Ohio-2219, ¶ 14. In the absence of a statutory right to appeal PERB's determination of PERS service credit, mandamus is an appropriate remedy. *Lucas Cty. Bd.* at ¶ 15, citing *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.,* 121 Ohio St.3d 526, 2009-Ohio-1704, ¶ 24.

{¶ 25} To be entitled to the requested writ of mandamus, relators were required to establish that PERB abused its discretion by determining that they were not entitled to PERS service credit. *Lucas Cty. Bd.* at ¶ 16, citing *Davis* at ¶ 25. To prove an abuse of

---

[3] The March 1, 2011 action was filed by Altman-Bates, Neyerlin, and Steele. On February 29, 2012, Anderson moved to intervene as an additional relator in the action. The magistrate granted Anderson's motion on March 1, 2012.

discretion, relators must demonstrate that PERB's decision was unreasonable, arbitrary or unconscionable. *Id.* In addition, PERB does not abuse its discretion if there is some evidence to support its determination. *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.,* 114 Ohio St.3d 147, 2007-Ohio-3760, ¶ 19.

{¶ 26} Relators Altman-Bates and Neyerlin jointly advance 17 objections to the magistrate's decision, and relators Steele and Anderson jointly advance eight objections to the magistrate's decision. Upon review of all 25 objections, we find that relators' objections collectively set forth seven basic premises: (1) the magistrate applied an incorrect standard of review, (2) the magistrate's decision is inconsistent with prior decisions of this court and the Ohio Supreme Court, (3) the magistrate erred in failing to find that spoliation of evidence occurred during the course of the proceedings, (4) the magistrate erred in failing to find that PERB did not comply with the Supreme Court's remand order in *Davis,* (5) the magistrate failed to consider certain arguments raised by relators, (6) the magistrate improperly based her decision on respondents' subjective intent, and (7) the magistrate erred in finding that PERB's decision is supported by some evidence.

{¶ 27} Relators' first premise concerns the applicable standard of review. Specifically, relators contend the magistrate improperly applied the "some evidence" standard of review.

{¶ 28} Relators claim they were entitled to PERS service credit for the relevant time period because they were public employees. Under R.C. 145.01(A)(3), a public employee for purposes of PERS membership includes "an employee of a public employer." Thus, relators' claim that they were public employees during the relevant time period ultimately turns on whether the FCPDO Nonprofit was a public or private employer. The FCPDO's status as a public or private employer is grounded upon whether either the Commissioners or the FCPDC, or both, exercised such complete control over the FCPDO Nonprofit that it had no separate mind, will or existence of its own, i.e., whether the FCPDO Nonprofit was merely the "alter ego" of the Commissioners or the FCPDC. As properly found by the magistrate, this determination is a factual one; accordingly, PERB's conclusions that the FCPDO Nonprofit operated as a private entity and not as the "alter ego" of the Commissioners or the FCPDC and that relators were

employees of this private entity, must be reviewed under the "some evidence" standard. Because the magistrate properly employed this standard, no error occurred.

{¶ 29} Under their second premise, relators contend the magistrate's decision either disregards or is inconsistent with the Supreme Court's decisions in *Mallory, Van Dyke*, and *Davis* and with this court's previously vacated decision in *State ex rel. Kura v. Pub. Emp. Retirement Bd.,* 10th Dist. No 01AP-56 (Dec. 20, 2001) (memorandum decision).

{¶ 30} Careful review of the decision reveals that the magistrate properly outlined and applied the Supreme Court's decisions in *Mallory, Van Dyke*, and *Davis* to the present case.   Relators' assertions to the contrary are thus without merit.

{¶ 31} Relators' contentions regarding this court's *Kura* decision are similarly misplaced.   In *Kura,* Kura's widow attempted to collect from PERS a refund of employee contributions which should have been made during Kura's service with the FCPDO (1976-1984) and with the FCPDO Nonprofit (1985-October 1992).   Following the Supreme Court's decision in *Mallory*, the Commissioners remitted employer and employee contributions for employees of the FCPDO but not for Kura.   Adopting the magistrate's decision, this court concluded that Kura should have been treated the same as the other employees affected by the *Mallory* decision and considered a carryover employee under R.C. 145.01(A)(2).   In adopting the magistrate's decision, this court adopted the magistrate's averment that Kura was a public employee as defined in R.C. 145.01(A) from July 1976 to October 1992.

{¶ 32} After the case settled, this court vacated its memorandum decision.   In its February 4, 2002 judgment entry, this court stated, "[t]he Judgment Entry, Memorandum Decision and Writs of Executions heretofore issued by this Court on December 20, 2001, are set aside and shall not be binding on the parties or of prospective precedential effect."   Citing federal case law, relators contend that this court improperly vacated the *Kura* decision and, therefore, we must reinstate it.   The cases upon which relators rely are inapposite to the present case, as they involved situations where parties to the litigation filed contemporaneous challenges to a request or motion to vacate. Relators do not direct us to any case law which would permit them—non-parties in *Kura*—to collaterally attack this court's vacatur decision more than a decade after the fact.

{¶ 33} Furthermore, reinstatement of the *Kura* decision would not aid relators' cause. Relators contend that this court's statement that Kura was a "public employee" constituted a dispositive ruling that employees of both the FCPDO and the FCPDO Nonprofit are public employees entitled to PERS membership. As noted by the magistrate, relators take this statement out of context. This court simply indicated that PERS had abused its discretion when it failed to treat Kura the same as other similarly situated employees following the *Mallory* decision, i.e., a carryover employee following incorporation of the FCPDO Nonprofit. *Kura* did not address the status of individuals initially hired after the incorporation of the FCPDO Nonprofit.

{¶ 34} Relators maintain in their third premise that the magistrate erred in failing to find that spoliation of evidence occurred in this case, resulting in a denial of relators' due process rights.

{¶ 35} As previously noted, the present case resulted from a remand order by the Supreme Court in *Davis.* Upon remand, PERB reopened the record. A hearing was held on July 20 and 21, 2009. All claimants, including relators, were provided the opportunity to submit testimony and documentary evidence, as well as legal memoranda, pertaining to their claims.

{¶ 36} On February 8, 2012, PERB filed four volumes of certified evidence and served copies of these volumes on all parties. The certified record consisted of all filings and evidentiary materials submitted to PERB following the remand in *Davis* through PERB's ultimate determination in March 2010.

{¶ 37} On March 8, 2012, relators filed a motion seeking to compel PERB to "transfer and supplement the record with the entire/complete OPERS record," specifically, "the entire <u>Davis</u> record." (Mar. 8, 2012 motion.) PERB opposed the motion on grounds that the majority of the materials sought were duplicative of materials that had already been submitted, that requiring PERB to bear the entire cost of copying and filing the entire *Davis* record was unreasonably burdensome and cost prohibitive and that relators could access the entire *Davis* record on microfiche in the Franklin County Clerk of Court office.

{¶ 38} On March 16, 2012, relators filed a "Motion for Adverse Inference – Spoliation of Evidence," requesting that this court "order a legal presumption and factual

finding under the 'adverse inference' doctrine" that PERB had negligently or intentionally destroyed evidence included in the *Davis* record that "would have unequivocally proved that Relators were public employees and that Respondents are liable to Relators for their OPERS retirement service credits."  (Mar. 16, 2012 motion.)  Respondents requested a status conference to resolve the issue.

{¶ 39} Following a May 1, 2012 status conference, the magistrate, on May 2, 2012, memorialized an order directing the following procedure: (1) counsel for the Commissioners was to file and distribute to the parties a copy of the *Davis* record in CD form, (2) the parties were to review the disc to determine what parts of the record were relevant and necessary for determination of the issues before the court, (3) the parties were to discuss whether the record was complete, (4) any party unsatisfied with the state of the record was to advise the court, and (5) a briefing order or status conference was to follow.

{¶ 40} On August 10, 2012, relators filed a second motion for an order directing PERB to transfer the original *Davis* record and a second motion for adverse inference in regard to the alleged spoliation of evidence.  PERB opposed the motion, arguing that, pursuant to the magistrate's May 2, 2012 directive, the certified record from the *Davis* case had been obtained from the clerk and reviewed by the parties and that no party had advised the court of any dissatisfaction with the record.  PERB further maintained that no "adverse inference" finding was required, as relators had failed to support their claim that PERB destroyed evidence and that they were prejudiced by the alleged destruction.

{¶ 41} On September 17, 2012, the magistrate denied relators' motion, noting that relators had been provided "a CD copy of the evidence" and had failed to produce "any evidence supporting an argument that the record is not complete."  (Sept. 17, 2012 Magistrate Order.)

{¶ 42} In her April 30, 2013 decision, the magistrate acknowledged relators' continued allegation that PERB had failed in its duty to preserve the record and had, in fact, destroyed evidence crucial to relators' claims.  The magistrate found it disingenuous for relators to raise the issue, given that respondents had complied with an earlier order to prepare a CD of the record, that relators were provided time to review the record and to

inform the magistrate if any documents were missing, and that relators failed to challenge the evidentiary record.

{¶ 43} We find no error in the magistrate's conclusion. While relators continue to argue that PERB lost or destroyed evidence related to their claims, they offer nothing beyond conjecture in support of their assertion.

{¶ 44} Relators in their fourth premise contend that the magistrate erred in failing to find that PERB failed to comply with the Supreme Court's remand order in *Davis*. Relators maintain that, because the hearing examiner did not physically attend the July 2009 evidentiary hearing, the proceedings did not constitute an adjudication on the merits of their claims in contravention of the remand order.

{¶ 45} Former Ohio Adm.Code 145-1-11(C)(1) permitted PERB to refer membership determinations to an independent hearing examiner prior to making a final decision on the matter. Former Ohio Adm. Code 145-1-11(C)(1)(a) required the appointed hearing examiner to "conduct a hearing" and issue a report and recommendation. Former Ohio Adm.Code 145-1-11(C)(1)(b) mandated that a transcript of the hearing be made and that all parties be permitted to submit both testimonial and documentary evidence at the hearing. However, former Ohio Adm.Code 145-1-11 did not specify how the hearing examiner was to "conduct a hearing."

{¶ 46} As noted above, in the months leading up to the July 2009 hearing, all the claimants, including relators, were notified of the procedures to be employed at the hearing. These procedures included submission of testimony through affidavit or deposition. Relators, like the other claimants, were permitted to testify and cross-examine the other testifying witnesses. In addition, all the claimants, including relators, were timely notified that the hearing examiner would not be present at the hearing. Although relators were provided the opportunity to raise objections to these procedures, none did so. Following the hearing, relators had the opportunity to submit briefing and documentary evidence.

{¶ 47} In his report and recommendation, the hearing examiner averred that he had thoroughly reviewed and considered all testimony and exhibits prior to entering his findings, conclusions, and recommendation. The hearing examiner set forth in great

detail the evidence presented regarding the claimants' alter ego and control theory, including a detailed recitation of the submitted affidavit and deposition testimony.

{¶ 48} For the foregoing reasons, we find that, despite the hearing examiner's physical absence from the two-day evidentiary hearing, relators were provided a full and fair opportunity to present the merits of their alter ego and control theory. Accordingly, we find that PERB fully complied with the Supreme Court's remand order in *Davis* and the magistrate did not err in failing to find otherwise.

{¶ 49} In their fifth premise, relators contend the magistrate failed to consider certain arguments raised by relators. Steele and Anderson contend that the magistrate failed to address the arguments asserted in their merit brief. While the magistrate's decision identifies only the specific propositions of law raised by relators Altman-Bates and Neyerlin, review of the arguments set forth in the Steele/Anderson merit brief demonstrates that they are duplicative of, and subsumed within, those raised in the Altman-Bates/Neyerlin merit brief.

{¶ 50} Relators Altman-Bates and Neyerlin contend the magistrate failed to consider their argument regarding the legal effect of the March 1999 renewal of the FCPDO Nonprofit's Articles of Incorporation. Relators summarily assert that the FCPDO Nonprofit's filing of a Statement of Continued Existence with the Ohio Secretary of State in March 1999 established that the FCPDO Nonprofit was defectively and illegally established at the outset. Relators point to no evidence demonstrating that either the FCPDO Nonprofit's Articles of Incorporation or the Statement of Existence were defective. Further, relators do not cite any authority for its proposition that the FCPDO Nonprofit was required to dissolve in 1998 in order for it to have been a valid nonprofit corporation in 1985.

{¶ 51} Respondent Commissioners maintain that the FCPDO Nonprofit filed the Statement of Continued Existence in order to recover social security contributions made on behalf of those employees who were found in *Mallory* to be carryover employees. According to the Commissioners, only the contributing employer, i.e., the FCPDO Nonprofit, could recover those contributions. Evidence in the record establishes that the FCPDO Nonprofit was working toward that recovery, and relators point to no

contradictory evidence.   Accordingly, even assuming the magistrate failed to consider relators' argument, no prejudice resulted.

{¶ 52} Under their sixth premise, relators contend the magistrate improperly based her decision to deny the writ of mandamus upon the subjective intent of respondents, rather than objective evidence in the record, as to the incorporation of the FCPDO Nonprofit.    In support, relators cite two statements from the magistrate's decision.  The first statement was made in the context of discussing the initial formation of the FCPDO in 1976: "review of the earliest documents in the record concerning the formation of the FCPDO establishes that the reason this format was utilized was to avoid what many saw as a legitimate conflict: that the government should not both prosecute and defend indigent criminal defendants."   (Magistrate Decision, 11.)   The second statement was made in the context of discussing relators' argument that the FCPDO Nonprofit was created for the sole purpose of avoiding enrolling the post-1985 hires in PERS:  "all the evidence reviewed beginning with the first meeting where the matter was first discussed leads to one conclusion: because of the perceived conflict of interest in having the county both prosecute criminal defendants and defend criminal defendants, steps were taken to create a private entity with whom the county would contract for those services." (Magistrate Decision, 23-24.)

{¶ 53} Contrary to relators' assertion, the magistrate did not conclude that respondents' subjective intent was a relevant factor in analyzing the merits of relators' alter ego and control claims.  The magistrate expressly stated, "[t]he question currently before this court focuses on whether or not the actions taken after the General Assembly enacted the amendments to R.C. Chapter 120 and the [FCPDO Nonprofit] was incorporated as a non-profit corporation were sufficient to carry out the original goal of creating a non-government organization."  (Magistrate Decision, 11.)  In addressing that question, the magistrate thoroughly analyzed all of relators' arguments regarding their alter ego and control theory and concluded that some evidence supported PERB's conclusion that neither the Commissioners nor the FCPDC had exercised such complete control over the FCPDO Nonprofit that it had no separate mind, will or existence of its own.    Thus, it was analysis of the objective evidence in the record, not the subjective

intent of respondents in creating the FCPDO Nonprofit, upon which the magistrate recommended denial of the writ.

{¶ 54} In their seventh and final premise, relators contend the magistrate erred in concluding that PERB's decision was supported by "some evidence." Relators' arguments in this regard fall into one of two categories: (1) the magistrate erred by failing to give sufficient weight to certain evidence in the record or (2) the magistrate erred in rejecting relators' legal arguments challenging the formation of the FCPDO Nonprofit.

{¶ 55} Regarding the first category, relators point to evidence in the record that they insist compels the conclusion that, between 1985 and 1998, their employer, the FCPDO Nonprofit, was the alter ego or under the control of the FCPDC or the Commissioners, and, therefore, they were public employees employed by a public employer. For instance, relators note that during the relevant time period, the Commissioners provided them with group health insurance and resolved to obligate the county for accrued vacation and unemployment costs should the FCPDO Nonprofit cease doing business; in addition, relators participated in the Ohio Deferred Compensation program. Relators also cite evidence that the FCPDC set policies for day-to-day operations of the FCPDO Nonprofit.

{¶ 56} After examining all the evidence, however, the magistrate concluded that PERB's finding—that between 1985 and 1998, the FCPDO Nonprofit functioned as a private, nonprofit corporation, independent of the Commissioners and the FCPDC, and that relators were employed by this private employer—was supported by some evidence.

{¶ 57} A review of the record reveals that "some evidence" supports the magistrate's finding. For example, the FCPDO Nonprofit's Articles of Incorporation designate that it is a "non-profit corporation" formed in accordance with R.C. Chapter 1702, for the primary purpose of providing free legal representation to indigent persons in Franklin County. As noted by the hearing examiner, the FCPDO Nonprofit maintained the requisite functions of a bona fide corporation: it had a statutory agent, it promulgated internal policies, it obtained audits of its financial accounts, its officers held meetings and recorded those meetings through corporate minutes, its officers acted through the adoption of resolutions, and it entered into contracts.

{¶ 58} In addition, prior to the incorporation of the FCPDO Nonprofit, both meeting minutes of the FCPDC and organizational charts of the FCPDO referred to the position held by Kura as the Franklin County Public Defender. On January 9, 1985, the FCPDO Nonprofit adopted its Code of Regulations, which created the position of Director, and appointed Kura to that position. The FCPDO Nonprofit's meeting minutes and organizational charts consistently identified Kura's position and that of his successor, Judith Stevenson, as "Director." After January 1, 1999, when the employees of the FCPDO Nonprofit became public employees, the position once again was identified as the "Franklin County Public Defender," not the "Director" of the FCPDO Nonprofit. In addition, contracts between the FCPDC and the FCPDO Nonprofit specifically identify the counterparty to the FCPDC as the "Franklin County Public Defender, an Ohio non-profit corporation."

{¶ 59} Testimony provided at the hearing also provides "some evidence" that the FCPDO Nonprofit operated independently of the FCPDC and the Commissioners. Although the FCPDC set policies for day-to-day operations of the FCPDO Nonprofit, implementation of those policies was exercised by the Director of the FCPDO Nonprofit, not the FCPDC or the Commissioners. Employee paychecks were signed by the Director of the FCPDO Nonprofit and identified the payor as the "Franklin County Public Defender," i.e., the FCPDO Nonprofit, not the FCPDC or the Commissioners. In addition, employees hired by the FCPDO Nonprofit were made aware that PERS contributions were not being withheld. Testimony also established that the employees of the FCPDO Nonprofit never attended FCPDC meetings, never took direct instructions from FCPDC, and were generally unsure of FCPDC's role.

{¶ 60} As noted by the magistrate, this court's task is to determine whether PERB abused its discretion, i.e., acted unreasonably, arbitrarily or unconscionably, in denying relators' request for PERS service credit. In making this determination, we do not assess the credibility or weight of the evidence. Rather, we determine only if "some evidence" supports PERB's decision.

{¶ 61} As to relators' legal challenges to the formation of FCPDO Nonprofit, we note that relators generally reiterate the arguments advanced in their merit brief and assert that the magistrate erred in rejecting them. Relators again contend that the

contracts between FCPDC and FCPDO Nonprofit violated both R.C. 120.14 and 2921.42. For the reasons set forth in the magistrate's decision, we disagree.

{¶ 62} R.C. 120.14(A)(2) provides that a county public defender commission "shall not appoint a county public defender" if the commission contracts with a nonprofit corporation to provide indigent legal services. Relators contend the FCPDC violated R.C. 120.14(A)(2) by both appointing the Franklin County Public Defender and contracting with the FCPDO Nonprofit. As the magistrate found, however, there was no person holding the office of Franklin County Public Defender between 1985 and 1999. Rather, that person was appointed as the "Director" of the FCPDO Nonprofit. In addition, the FCPDC contracted with the FCPDO Nonprofit, and Kura (and later, Stevenson) signed these contracts in their capacity as Director of the FCPDO Nonprofit. Thus, no violation of R.C. 120.14(A)(2) occurred.

{¶ 63} Similarly, no violation of R.C. 2921.42(A)(4) occurred. That statute prohibits a public official from knowingly having an "interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency or instrumentality with which the public official is connected." As noted above, between 1985 and 1999, Kura and Stevenson served as the Director of FCPDO Nonprofit, not as the Franklin County Public Defender, and the contracts were between two entities—the FCPDC and the FCPDO Nonprofit. Thus, unlike in *Mallory*—which addressed Kura's status prior to 1985, neither Kura nor Stevenson had an unlawful interest in a public contract between 1985 and 1999 in contravention of R.C. 2921.42(A)(4).

{¶ 64} Finally, we agree with the magistrate that relators' attempts to employ arguments regarding R.C. Chapter 1701 and the Code of Professional Responsibility as a means to invalidate the status of the FCPDO Nonprofit are neither persuasive nor dispositive as to the issue of relators' employment status between 1985 and 1999.

{¶ 65} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relators' objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. Accordingly, relators' request for a writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

KLATT and CONNOR, JJ., concur.

_____

## APPPENDIX

### IN THE COURT OF APPEALS OF OHIO

### TENTH APPELLATE DISTRICT

State ex rel. Marylou Altman-Bates et al.,        :

        Relators,                                        :

v.                                                :              No. 11AP-196

Public Employees Retirement Board                 :           (REGULAR CALENDAR)
and Franklin County Commissioners,
                                                  :
        Respondents.
                                                  :

---

## MAGISTRATE'S  DECISION

### Rendered on April 30, 2013

---

*John H. Bates,* for Marylou Altman-Bates.

*Amy Neyerlin,* pro se.

*Rebecca Steele,* pro se.

*Melani Anderson,* pro se.

*Michael DeWine,* Attorney General, and *Matthew T. Green,* for respondents.

---

### IN MANDAMUS

{¶ 66} Relators Marylou Altman-Bates, Amy Neyerlin, Rebecca Steele, and Melani Anderson, have filed this original action requesting that this court issue a writ of mandamus ordering respondent the Public Employees Retirement Board ("PERB" or "board") to grant their requests for membership status and service credit in the Public Employees Retirement System ("PERS") for the tenure of their employment as public defenders between 1985 and 1998 on grounds that they worked for a public employer and ordering respondent Franklin County Commissioners ("commissioners") to make both the employee and the employer contributions on their behalf for the same time period.

{¶ 67} Because these issues have been litigated since the 1980's and the various entities have been identified by different abbreviations, I am going to set out below the abbreviations I will be using to identify these entities. Further, I have gone through the various court decisions and, where cited or quoted, I have inserted the particular abbreviation I am using in place of the abbreviation that was used in order to help this court understand the factual history and timeline. Hopefully, these changes will make this case and the issues easier to understand.

FCPDO: Office of the Franklin County Public Defender in operation from 1976-1984.

FCPDNP: Franklin County Public Defender, Non-Profit in operation from 1985-1998.

FCPDC: Franklin County Public Defender Commission.

Commissioners: Franklin County Commissioners.

Findings of Fact:

{¶ 68} 1. Relators are attorneys hired to work for the Franklin County Public Defender, Non-Profit ("FCPDNP") after 1984 and before 1999.

{¶ 69} 2. Relators are part of the group of public defenders and support staff ("claimants") who, in 2001, requested a determination from PERS that they were public employees eligible for PERS membership and service credit during the specified period

{¶ 70} 3. In September 2003, PERS staff rejected claimants' contention that, although the FCPDNP was formed as a non-profit entity in 1985, it was a public employer or an agent of a public employer

{¶ 71} 4. PERS staff determined that, in *State ex rel. Van Dyke v. Pub. Emp. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, the Supreme Court of Ohio had found that post-1984 employees of the FCPDNP were not public employees and were not subject to coverage in PERS for the time period at issue because their employment was with a private entity and not a public employer nor an agent of a public employer

{¶ 72} 5. Claimants appealed the PERS staff determination and, in June 2004, following an administrative hearing, a PERS hearing examiner issued a report and recommendation and concluded that claimants were collaterally estopped from raising their claims because of the court's decision in *Van Dyke*

{¶ 73} 6. The hearing examiner recommended that PERB affirm the staff determination denying claimants' request for service credit for the period from January 1, 1985 through December 31, 1998

{¶ 74} 7. PERB accepted the examiner's findings of fact and conclusions of law and denied claimants' request finding that the FCPDNP was not operating as a public employer during that time period

{¶ 75} 8. As such, PERB never addressed claimants' arguments concerning agency, control, alter ego, piercing the corporate veil and lack of separate mind, will, or existence, that were raised to establish that, because of Franklin County's control over the FCPDNP, the purported private corporation remained a public employer

{¶ 76} 9. Claimants filed a mandamus action and, in December 2007, this court granted a limited writ of mandamus ordering PERB to vacate its order denying claimants' service credit and ordering PERB to issue a new order after adjudicating claimants' claims on the merits. This court determined that PERB abused its discretion when it found that the decision in *Van Dyke* collaterally estopped claimants from claiming that the FCPDNP was a public employer. *State ex rel. Davis v. Pub. Emp. Retirement Bd.,* 10th Dist. No. 04AP-1293, 2007-Ohio-6594.

{¶ 77} 10. PERB appealed and the Supreme Court of Ohio determined that it had not actually decided the FCPDNP's post-incorporation status in either *Van Dyke* or *State ex rel. Mallory v. Pub. Emp. Retirement Bd.*, 82 Ohio St.3d 235 (1998). The court granted a limited writ of mandamus ordering PERB to vacate its order denying claimants'

claims for PERS service credit and to issue a new order adjudicating the merits of those claims

{¶ 78} 11. After the matter was remanded, it was determined that counsel continued to represent only 12 of the original 51 claimants. Relators were not part of that group of 12. However, notice of the proceedings was sent to each claimant no longer represented

{¶ 79} 12. An evidentiary hearing was scheduled and an opportunity to supplement the record following the hearing was provided. Relators Altman-Bates and Steele attended the hearing and relator Steele testified

{¶ 80} 13. On November 30, 2009, the hearing examiner issued a report and recommendation. At the outset of the report, the hearing examiner set out the issue:

> [T]he overarching issue is whether the Claimants have proved, by at least a preponderance of the evidence, that they worked for a public employer between 1985 and 1998.
>
> * * *
>
> [T]he Board must consider the nature of the relationship between the Claimants' employer - a non-profit corporation [FCPDNP] created on December 31, 1984 - and both the Franklin County Commission [commission] and the Franklin County Public Defender Commission [FCPDC].

(Hearing examiner's report, at 3.) The hearing examiner explained further:

> [T]hree things happened in 1984 and 1985 that have yet to be considered by the Board: First, in 1984 the General Assembly enacted O.R.C. 120.14(F), which authorized county public defender commissions to contract with non-profit organizations to provide representation to indigent criminal defendants. Second, under the authority of O.R.C. 120.14(F), the Franklin County Public Defender Commission [FCPDC] created such a non-profit organization. Starting on January 1, 1985, all of the employees who had, to that date, been working for the Franklin County Public Defender (the individual), now became employees of the non-profit corporation [FCPDNP], identified in the articles of incorporation as the "Franklin County Public Defender." And third, after creating the non-profit corporation [FCPDNP], the Franklin County Public Defender Commission [FCPDC] entered into contracts with Franklin County and the city of

> Columbus (and, later on, with some of the suburbs near Columbus), by which the newly created non-profit corporation would provide the same services as those that had been provided by the employees of the Franklin County Public Defender prior to January 1, 1985.

(Hearing Examiner's report, at 3.)

{¶ 81} As the hearing examiner stated: "Once the Board considers the evidence presented, it must determine whether the Claimants' employer was the non-profit corporation formed in 1984 [FCPDNP], or either the Franklin County Board of Commissioners [Commissioners] or the Franklin County Public Defender Commission [FCPDC]." (Hearing Examiner's report, at 4.

{¶ 82} Ultimately, the hearing examiner concluded that claimants did not meet their burden of proof finding that the evidence established that claimants were employed by a non-profit corporation (FCPDNP) that was not a public employer between 1985 and 1999

{¶ 83} 14. Relators Altman-Bates and Neyerlin filed separate objections to the report and recommendation

{¶ 84} 15. PERB met to consider the hearing examiner's report and recommendation on March 17, 2010. The board voted to accept the findings of fact and conclusions of law contained in the report and recommendation and found that FCPDNP was a non-profit corporation that employed claimants to provide public defender services and was not a public employer for purposes of PERS

{¶ 85} 16. Thereafter, relators filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 86} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 87} In *Mallory*, the Supreme Court of Ohio explained the history of the various entities involved up until 1985:

> In 1976, the General Assembly enacted R.C. Chapter 120, the Public Defender Act. The Act established the Ohio Public Defender Commission and authorized counties to create county and joint county public defender commissions. 136 Ohio Laws, Part I, 1868. In accordance with R.C. 120.13, the Franklin County Commissioners established the Franklin

County Public Defender Commission ("commission") [FCPDC] to provide legal representation to indigent persons as required by law. Pursuant to R.C. 120.14, the commission appointed the Franklin County Public Defender. Attorney James Kura was appointed to the position. Kura then hired attorneys and support personnel to form the Franklin County Public Defender's Office ("FCPDO"). The FCPDO employed many of the same attorneys and staff who were formerly employed by the Franklin County Legal Aid and Defender Society, a nonprofit corporation that ceased its work in the criminal defense area in 1976. The FCPDO, thereafter, provided public defender services to indigent criminal defendants in Franklin County, and pursuant to R.C. 120.18, Franklin County received reimbursement from the state for the cost of operating the FCPDO. Once established, the FCPDO operated as if it were a non-public, unincorporated association and both the FCPDO, as an employer, and its employees paid Social Security taxes on their wages. The commission and Kura considered the FCPDO to be a non-county agency and thus FCPDO employees were not treated as "public employees" for purposes of the Public Employees Retirement System ("PERS").

Under the 1976 Public Defender Act, in addition to Franklin County, twenty-four other counties established county public defender commissions that appointed county public defenders. Twenty-three of these counties treated employees of their public defender offices as county employees and members of PERS. Summit County was the only other county, besides Franklin, that considered employees of the public defender's office to be private employees.

* * *

In 1980, the State Auditor informed Summit County officials that the county's public defender office was operating illegally and was not entitled to state reimbursement under R.C. 120.18. Summit County permitted the office to continue to operate, but without state reimbursement. The State Auditor's action evidently resulted from an informal 1980 opinion issued by the Administrative Agencies Section Chief of the Attorney General's Office, wherein the section chief had concluded that employees of county public defender offices were county employees for purposes of PERS.

Minutes from the commission's 1980 meetings clearly indicate that Kura and members of the commission were keenly aware of the Attorney General's opinions and, consequently, decided that an amendment to R.C. Chapter 120 was necessary to "legalize the way [the FCPDO] operates." In addition, the Ohio Public Defender informed Kura as early as 1980 that the FCPDO was not legally constituted and that it was a county agency. During one of the commission's 1982 meetings, Kura conceded that if R.C. Chapter 120 were not amended the State Auditor would advise the FCPDO that it needed to treat its employees as county employees. Further, Kura advised one commission member that the commission did not have to worry about the possibility of FCPDO employees raising the issue of entitlements to PERS membership because the new amendment to R.C. Chapter 120 would include a provision retroactively legalizing the FCPDO's operation as a private entity.

In 1984, the General Assembly enacted R.C. 120.14(F) to specifically permit county and joint county public defender commissions to contract with non-profit organizations to provide representation to indigent criminal defendants. 140 Ohio Laws, Part I, 949, 956–957. However, R.C. 120.14(F) did not contain a provision giving it retroactive effect. Following the enactment, the FCPDO was incorporated as a non-profit corporation [FCPDNP]. Thereafter, the commission (Franklin County Public Defender Commission) [FCPDC] contracted with the county commissioners and the city of Columbus to provide legal representation for indigent criminal defendants in Franklin County, and the commission [FCPDC] subcontracted with the newly incorporated * * * [FCPDNP] to provide the contracted-for services.

*Id.* at 235-237.

{¶ 88} Several cases have addressed the employment status of individuals employed by the Franklin County Public Defender Office (FCPDO in operation from 1976 to 1984), and the Franklin County Public Defender Non-Profit (FCPDNP in operation from 1985 through 1998).

Prior to 1985

{¶ 89} *Mallory* involved the FCPDO and events prior to 1985.  Diane Mallory was employed at the FCPDO as a law clerk from June 1978 to September 1980 and as an

attorney from February 1982 to January 1994. During that time, no contributions were made to PERS on her behalf. Instead, Mallory and the FCPDO paid Social Security taxes. In September 1994, Mallory requested service credit in PERS for her 14 years of prior service with the FCPDO. PERS denied Mallory's request after finding that the FCPDO had been an unincorporated association throughout Mallory's employment. Mallory filed a complaint for a writ of mandamus; however, this court denied the writ, stating:

> After the passage of R.C. 120.14(F) [in 1984], the FCPDO changed the structure of its organization to a non-profit organization and filed articles of incorporation [FCPDNP]. Immediately thereafter, the FCPDO, as an unincorporated association, assigned all its rights, title and interest, to the tangible and intangible property held by it to the [FCPDNP], as an Ohio not-for-profit corporation. However, because R.C. 120.04(C)(3) had already authorized the Franklin County Public Defender to contract with a private organization for providing legal services to the indigent, relator's argument fails. In 1984, the FCPDO changed its status as an unincorporated association to a not-for-profit corporation [FCPDNP] for whatever reasons. However, that does not change the fact that, pursuant to the statute in effect in 1976, the right to contract with a private organization to supply legal services for the indigent already existed.

*Id.* at 238-39.

{¶ 90} On appeal, the Supreme Court of Ohio reversed and found that FCPDO employees were employed by a county agency (the FCPDC) and a county officer (Franklin County Public Defender James Kura) to perform a governmental function (providing legal representation to indigent criminal defendants) for which FCPDO employees were paid by the county. As such, the court determined that pre-1984 FCPDO employees such as Mallory were public employees for purposes of R.C. 145.01(A)(1) and the commissioners were held liable for both the employer and employee contributions to PERS for Mallory and others similarly situated. Further, the court determined that Mallory was a carry-over employee under R.C. 145.01(A)(2) and that after the FCPDO was incorporated in 1984 and became the FCPDNP, Mallory retained her right to be included as a PERS covered employee

{¶ 91} This court had concluded that Mallory was not a public employee because, even before the passage of R.C. 120.14(F) in 1984, the Franklin County Public Defender

(Kura) had the authority to contract, and had in fact contracted, with the FCPDO. Specifically, Kura had hired attorneys and support staff to form the FCPDO which was operated as if it were a non-public, unincorporated association.

{¶ 92} In rejecting this court's determination, the Supreme Court of Ohio noted the following: (1) the record was devoid of any evidence of a contract between Kura and FCPDO and (2) even if a contract between Kura and the FCPDO did exist, the court found that the contract would have been invalid under R.C. 2921.24, which prohibits any public official from knowingly having an interest in the profits or benefits of a public contract entered into by or for the use of the political subdivision or governmental agency with which the public official is connected. Further, with little explanation, the court stated that, because the FCPDC was created and Kura was appointed as the Franklin County Public Defender pursuant to the Public Defender Act of 1976, and, because they exercised powers and duties pursuant to the Public Defender Act of 1976 to comply with the governmental duty to provide assistance of counsel to indigent criminal defendants, the FCPDC and the FCPDO were public offices and employees such as Mallory were public employees. And finally, the court found that the actions taken by the FCPDC and Kura in actively advocating for the 1984 amendment was an acknowledgement that those amendments were necessary to legalize the FCPDO thereby conceding that, prior to the amendment, the FCPDO was a county agency staffed by county employees.

## 1985 and Thereafter

{¶ 93} The next case which addressed the public employment status of individuals employed by the FCPDO or the FCPDNP was *Van Dyke.* Omia Nadine Van Dyke worked for the FCPDO from 1982 until 1985 at which time she left and began working for the Franklin County Court of Common Pleas, Division of Domestic Relations, Bureau of Support, as a staff attorney. In 1986, Van Dyke resigned her position with the Bureau of Support and was re-employed by the FCPDNP until she resigned in 1991.

{¶ 94} Following the decision in *Mallory*, Van Dyke requested that PERS grant her service credit for her employment from 1982 through 1985 and from 1986 through 1991. PERB granted Van Dyke's request for service credit from 1982 through 1985 pursuant to *Mallory* decision, but denied her request for credit from 1986 through 1991

{¶ 95} Van Dyke filed a mandamus action in this court arguing that, like Mallory, she was a carry-over employee (hired first by the FCPDO and then re-employed with the FCPDNP). This court rejected the decision of its magistrate and determined that PERB abused its discretion by concluding that she was not a public employee under the carry-over provision found in R.C. 145.01(A)(2)

{¶ 96} On appeal, the Supreme Court of Ohio reversed finding that PERB did not abuse its discretion when it concluded that Van Dyke was not a public employee under the carry-over provision. Specifically, the court stated:

> R.C. 145.01(A)(2) requires that the employee continue to perform the publicly operated function for the contractor after the publicly operated function is taken over by that contractor. See, also, R.C. 145.03(A) ("membership in the system is compulsory upon being employed and shall continue as long as public employment continues"). Van Dyke continued to work until 1985 performing the public function of providing legal services for indigent criminal defendants for the contractor, FCPDO, after its 1984 incorporation as a nonprofit entity [FCPDNP]. In November 1985, however, she resigned her position with [FCPDNP] and began employment with the bureau of support. When she was reemployed by [FCPDNP] in April 1986, she was not "continuing" her employment with a private contractor [FCPDO] that was taking over a previously publicly operated function. Instead, in April 1986, she was beginning a term of employment with a private contractor [FCPDNP] that years before had taken over the publicly operated function.

*Vandyke*, at ¶ 29.

## The Current Action

{¶ 97} As noted in the findings of fact, relators are part of a group of individuals who were hired after 1985 by the FCPDNP. These individuals never worked for the FCPDO and only worked for the FCPDNP following the amendments to R.C. Chapter 120 and the incorporation of the FCPDNP as a non-profit organization. Relators are asking for service credit in PERS from the date they were hired through 1998

{¶ 98} As a factual matter, it is undisputed that, in 1976, the commissioners, in accordance with R.C. 120.13, established the FCPDC to provide legal representation to indigent persons as required by law. Thereafter, the FCPDO was established and was

operated as if it were a non-public, unincorporated association and both the FCPDO, as an employer, and its employees paid Social Security taxes on their wages. Further, review of the earliest documents in the record concerning the formation of the FCPDO establishes that the reason this format was utilized was to avoid what many saw as a legitimate conflict: that the government should not both prosecute and defend indigent criminal defendants

{¶ 99} In *Mallory*, the Supreme Court of Ohio determined that, despite Franklin County's efforts to contract for public defender services through a non-governmental agency and thereby avoid the perceived conflict of interest, Franklin County had failed to do so. The court determined that FCPDO had not properly established itself as a non-public, unincorporated association but that it was a public office and that its employees were public employees.

{¶ 100} The question currently before this court focuses on whether or not the actions taken after the General Assembly enacted the amendments to R.C. Chapter 120 and the FCPDNP was incorporated as a non-profit corporation were sufficient to carry out the original goal of creating a non-government organization. For the reasons that follow, the magistrate finds that there is some evidence in the record to support PERB's determination that the FCPDNP was not a public employer and that relators and other employees hired after 1984 and before 1999 were not public employees

{¶ 101} It is undisputed that an action in mandamus is the appropriate remedy to determine relators' claimed entitlement to PERS service credit. *State ex rel. Ryan v. State Teachers Retirement Sys.*, 71 Ohio St.3d 362 (1994). *McAuliffe v. Bd. of Pub. Emp. Retirement Sys. of Ohio*, 93 Ohio App.3d 353 (10th Dist.1994).

{¶ 102} To be entitled to the requested writ of mandamus, relators must establish that PERB abused its discretion by denying their request for PERS service credit. PERB abuses its discretion if it acts in an unreasonable, arbitrary, or unconscionable manner. *Mallory.* As such, this court's review is limited. This court does not determine the credibility of the evidence and does not reweigh the evidence. Provided that PERB correctly applied the law, if there is some evidence in the record to support PERB's decision, then this court must uphold PERB's decision

{¶ 103} In this mandamus action, relators set forth their arguments as propositions of law one through eight:

### Proposition of Law No. I

PERB abused its discretion by denying relators' request for PERS membership and service credit from 1985 through 1999.

### Proposition of Law No. II

Franklin County Public Defender was structured and created to be controlled by Franklin County Public Defender Commission.

### Proposition of Law No. III

There was no lawful contract between Franklin County Public Defender Commission and Franklin County Public Defender under R.C. 2921.42.

A. Franklin County Public Defender Commission is a county agency subject to R.C. 2921.42.

B. The name "Franklin County Public Defender" is an unlawful corporate name pursuant to R.C. 1701.

**C. Use of the name "Franklin County Public Defender" clearly violates the Code of Professional Responsibility.**

D. The corporate form should be disregarded.

### Proposition of Law No. IV

The subcontracts between Franklin County Public Defender Commission and Franklin County Public Defender were not at arms length and did not have two independent parties.

A. Franklin County Public Defender Commission was on both sides of the subcontracts.

B. Franklin County Public Defender Commission violated R.C. [1]20.14(A)(2).

C. Franklin County Public Defender did not have a contractual relationship with Franklin County Public Defender Commission for the suburbs' legal work.

D. Franklin County Public Defender Municipal Court Staff were appointed to their jobs by the Columbus Public Defender, a separate appointing authority.

## Proposition of Law No. V

Franklin County Public Defender Commission exercised actual control over Franklin County Public Defender.

## Proposition of Law No. VI

Statutory provisions placed control in Franklin County Public Defender Commission and the Franklin County Board of Commissioners.

## Proposition of Law No. VII

**Relators are public employees within the meaning of R.C. 145.01(A)(1) and (3) and/or were employed by a public employer as that term is used in R.C. 145.01(D).**

A. Because Franklin County Public Defender Commission and Franklin County Board of Commissioners have ultimate control over and the statutory responsibility to provide legal services under R.C. Chapter 120. They are claimants['] employer.

B. Franklin County Public Defender was Franklin County Public Defender Commission.

**C. Statutory authority permitting a county agency or official to contract with another for the performance of a governmental function is mandatory and contracts made in violation of such requirements are void.**

D. All staff who worked in the municipal court unit of Franklin County Public Defender were appointed by the Columbus Public Defender, a separate appointing authority.

E. Because of the blended operating relationship and their unified structure Franklin County Public Defender Commission and Franklin County Public Defender are a joint public employer of relators.

F. Relators qualify for PERS under R.C. 145.01(A)(1), (3) and R.C. 145.01(D).

G. Private employers are covered by PERS.

## Proposition of Law No. VIII

PERB did not comport with the law of this case.

(Emphasis sic.) (Relators' brief, at 1-4.)

{¶ 104} As will be more fully explained, the report and recommendation of the hearing officer demonstrates that PERB has in fact considered all of relators' arguments wherein relators tried to establish that FCPDNP was not properly incorporated and was not properly run to avoid being a public employer. Therefore, this court must review the record and determine whether there is some evidence in the record to support PERB's determination.

{¶ 105} In finding that Diane Mallory was a public employee employed by a county agency, specifically the FCPDC, and a county officer, specifically the Franklin County Public Defender James Kura, the Supreme Court relied on the following: (1) James Kura was appointed the Franklin County Public Defender; (2) both Kura and the FCPDC exercised powers and duties pursuant to the Public Defender Act to comply with the governmental duty to provide assistance of counsel to indigent criminal defendants; (3) the record was devoid of any contracts, written or oral, between Kura and the FCPDO; (4) any contract would have been invalid under R.C. 2921.42 which prohibits a public official from having an interest in the profits or benefits of a public contract entered into by or on behalf of the political subdivision or governmental agency with which the public official is connected; and (5) Kura and the FCPDC recognized that the 1984 amendment to R.C.

Chapter 120 was necessary to legalize the FCPDO thereby conceding that the FCPDO was a county agency staffed by county employees.

{¶ 106} After the 1984 amendments to R.C. Chapter 120, what, if anything, changed?  First, the FCPDNP was incorporated as a non-profit entity.  Second, James Kura (and later Judith Stevenson), were clearly identified as directors of the FCPDNP and were no longer identified as the Franklin County Public Defender.

{¶ 107} Third, the statutory framework remained essentially the same with one exception.  R.C. 120.14(F) was enacted and provides:

> A county public defender commission, with the approval of the board of county commissioners regarding all provisions that pertain to the financing of defense counsel for indigent persons, may contract * * * with any nonprofit organization, the primary purpose of which is to provide legal representation to indigent persons, for * * * the organization to provide all or any part of the services that a county public defender is required or permitted to provide by this chapter. A contract entered into pursuant to this division may provide for payment for the services provided on a per case, hourly, or fixed contract basis. * * * [A]ny nonprofit organization that contracts with a county public defender commission pursuant to this division shall do all of the following:
>
> (1) Comply with all standards established by the rules of the Ohio public defender commission;
> (2) Comply with all standards established by the state public defender;
> (3) Comply with all statutory duties and other laws applicable to county public defenders.

{¶ 108} The FCPDC contracted with the FCPDNP and the FCPDNP thereafter became responsible for complying with all relevant law. As such, by contracting with the FCPDNP, the FCPDC no longer exercised powers and duties pursuant to the Public Defender Act.  Instead, the FCPDNP became responsible for exercising those powers and duties.

{¶ 109} Fourth, the record contains copies of contracts between the FCPDC and the FCPDNP.  Further, those contracts were no longer entered into by a public official since the FCPDNP was run at the direction of a director and not by the Franklin County Public Defender.

{¶ 110} Considering the above changes, the magistrate finds that PERB did not abuse its discretion when it found, as an initial matter, that the FCPDNP was not a county employer. However, this conclusion does not render moot relators' arguments to the effect that, regardless of the above changes, the FCPDNP remained a public employer and either it or the FCPDC were relators' employer thereby making relators public employees

{¶ 111} In addressing relators' claims, PERB first considered the issue of control. Relators maintain that the FCPDC and the FCPDNP were essentially the same entity. Relators argue that this conclusion is inevitable given the corporate structure, the Articles of Incorporation and Code of Regulations, the institutional control the FCPDC exercised over the FCPDNP, the requirements of the Ethics Commission, and the fact that the FCPDC was on both sides of the contract (FCPDC contracted with itself). Relators contend that the Ethics Commission specifically required that the FCPDC have "complete control" over the FCPDNP and, as such, regardless of the steps taken to set up a private, non-profit organization, the FCPDNP was controlled by the FCPDC; and therefore, relators maintain that they were employed by a public employer. (Relator's brief at 17.) For the following reasons, the magistrate disagrees

{¶ 112} The focus of this argument is on the fact that the FCPDC was the trustee of the FCPDNP. The Ethics Commission was asked whether or not members of the FCPDC were prohibited from serving on the board of trustees of the proposed FCPDNP. In a letter dated October 25, 1984, the Ethics Commission set out the question before it:

> You stated; by way of history, that Division (F) of Section 120.14 of the Revised Code provides that a county public defender commission [FCPDC] may contract with a non-profit organization [FCPDNP] to provide legal services as county public defender, provided that the board of county commissioners [commissioners] approves all provisions that pertain to the financing of defense counsel for indigent persons. You also stated that a county public defender commission [FCPDC] plans to reorganize the office of the county public defender into a non-profit corporation [FCPDNP] with the primary purpose of providing legal representation to indigent persons. You indicated that the proposed articles of incorporation of the non-profit corporation [FCPDNP] provide that the members of the county public defender commission [FCPDC] serve as the trustees of the non-profit corporation [FCPDNP]. Such trustees would elect the officers of the corporation

[FCPDNP] performing the duties of county public defender. The Ohio Public Defender Commission and the Ohio Public Defender has ultimate oversight of the county public defender. Also, the trustees would not receive compensation. You asked whether such an arrangement would violate the Ohio Ethics Law and related statutes.

{¶ 113} Thereafter, the Ethics Commission explained that, because a member of a the FCPDC is a public official as defined in R.C. 2921.01(A), a contract with the FCPDC to purchase or acquire legal service from a non-profit corporation that provided legal representation to indigent persons was a public contract as defined in R.C. 2921.42(E)(1). However, the Ethics Commission indicated that such an arrangement would be permissible provided:

> (1) the governmental entity must create or be a participant in the non-profit corporation; (2) the elected legislative authority or the appointed governing body must formally designate the office or position to represent the governmental entity; (3) the public official or employee must be instructed to represent the governmental entity and its interests; and (4) there must be no other conflict of interest on the part of the designated representative. If these criteria are met, there is not a duality of interest on the part of the public official.

{¶ 114} Relators assert that the above requirements clearly establish that the FCPDC had "complete control" over the FCPDNP. Not so. The Ethics Commission stated that the proposed scenario was permissible, and did not pose a conflict of interest because:

> Under the facts presented, the county public defender commission [FCPDC] plans to create the non-profit corporation [FCPDNP] that will provide the contract legal services as county public defender. In addition, the commission [FCPDC] plans to formally designate by terms of the articles of incorporation that its members are to serve as trustees for the non-profit corporation [FCPDNP]. Finally, there does not appear to be any other conflict of interest. Assuming that the commission [FCPDC] also takes formal action to appoint its members to the board of trustees and instructs them to represent the commission [FCPDC] and its interests, the members would not have a prohibited interest in a public contract with their own entity of government.

{¶ 115} Contrary to relators' arguments, the Ethics Commission did not give the FCPDC complete control of the FCPDNP.  The FCPDC created the FCPDNP and was charged with ensuring that the FCPDNP complied with the requirements imposed on the government for representing indigent criminal defendants.  Ultimately, as relators point out elsewhere, the FCPDC was charged with the responsibility for providing legal representation.  Clearly, in the event that the FCPDNP failed to comply with the requirements, the FCPDC would have to make changes.  Oversight is not synonymous with control.  Further, as explained in the opinion of the Ethics Commission, the Ohio Public Defender Commission and the Ohio Public Defender have ultimate oversight.  As PERB explained, there is evidence in the record indicating that the FCPDC did not have ultimate control over the FCPDNP and, as such, PERB did not abuse its discretion in so finding.

{¶ 116} Further, to the extent that relators argue that R.C. 2921.42(A)(4)'s prohibition against public officials having an interest in the profits or benefits of a public contract entered into by or for the use of the government agency with which the public officer is connected, the magistrate finds that R.C. 2921.42(A)(4) was not violated here.  The Supreme Court found such a violation in *Mallory* after finding that Kura was a county officer.  Here, Kura was not a county officer; he and those who later served were directors of the FCPDNP and no longer served as public defenders.

{¶ 117} As explained, PERB determined that there was evidence that the FCPDC set policies for day-to-day operations, but that those policies were implemented by the director of the FCPDNP acting through his or her staff.  Attorneys and other support personnel had no contact with the commissioners and almost no contact with the FCPDC.  Members of the FCPDC did serve as trustees of the FCPDNP but had no greater role than required by R.C. 120.13, which enabled the creation of the FCPDC and R.C. 120.14, which authorized the FCPDC to enter into contracts with the FCPDNP

{¶ 118} Specifically, the magistrate notes that the contracts between the FCPDC and the FCPDNP were signed by the then-director of the FCPDNP and a member of the FCPDC.  There is no evidence indicating that the director of the FCPDNP was a member of the FCPDC nor have relators made such an argument.  Further, contracts between the city of Columbus and its suburbs were entered into between the city/suburb and the

FCPDC and a separate contract legally bound the FCPDNP to perform the obligations of the FCPDC. As PERB found, this was specifically anticipated and provided for in R.C. Chapter 120

{¶ 119} Contrary to relators' assertions, the magistrate finds that PERB did not abuse its discretion when it rejected relators' argument that the FCPDC actually contracted with itself. Further, the magistrate finds that PERB did not abuse its discretion when it found that the FCPDC did not violate R.C. 120.14(A)(2) which provides:

> If a county public defender commission contracts with the state public defender or with one or more nonprofit organizations for the state public defender or the organizations to provide all of the services that the county public defender is required or permitted to provide by this chapter, the commission shall not appoint a county public defender.

{¶ 120} As the trustee of the FCPDNP, the FCPDC appointed the director of the FCPDNP. The persons who held this position may have informally been considered to still be the "public defender"; however, informal references aside, these persons were clearly designated as directors for the FCPDNP. As the record demonstrates, prior to the incorporation for the FCPDNP, the person in charge of the FCPDO was clearly and officially designated as the public defender. This was part of the Supreme Court's rationale for determining that the FCPDO was a public office. The court found that Kura was a county officer, namely the Franklin County Public Defender. However, following the incorporation of FCPDNP, the person in charge was clearly identified as the director of the FCPDNP. The fact that in their respective briefs, relators consistently identify Kura as the public defender both before the incorporation of the FCPDNP and after does not change the fact that, after the incorporation of the FCPDNP, Kura was the director

{¶ 121} Relators raise several other tangential issues. Relators assert that the name "Franklin County Public Defender" is an unlawful corporate name under R.C. 1701 and that it misleads the public. However, the non-profit corporation was officially recognized as the Franklin County Public Defender, non-profit. The informal reference to it as the public defender was not misleading if for no other reason than its employees defended the public, specifically criminal defendants prosecuted in Franklin County. Further, R.C. Chapter 1701 applies to for-profit corporations and 1701.05 requires that certain words

appear at the end of the title:   corporation, corp., company, co., incorporated, or inc. However, Chapter 1701 does not apply here.  Instead, R.C. Chapter 1702, which concerns non-profit corporations applies and requires no such words.  Although relators assert that R.C. 1701.05 does apply, relators have not presented any authority for their assertion.  "In the absence clear legislative intent to the contrary, words and phrases in a statute shall be read in context and construed according to their plain, ordinary meaning."  *Kunkler v. Goodyear Tire & Rubber Co.,* 36 Ohio St.3d 135, 137 (1988).  Nothing in either R.C. Chapters 1701 nor 1702 indicates that the General Assembly intended that the requirements in R.C. 1701.05 would also apply to non-profit corporations

{¶ 122} Relators also assert that the change from a non-profit corporation to a county agency in 1999 violates the Code of Professional Responsibility because it was akin to the sale of a law practice and no attempt was made to notify its clients of this change in status.  This was not the sale of a law firm and Ohio's Rules of Professional Conduct R.1.17 (former Disciplinary Rule DR 2-111) does not apply.  Further, Ohio Rules of Professional Conduct R.7.5 (formerly DR 1-102) which applies to firm names and letterheads does not apply.  Relators' attempts to use such arguments to invalidate the status of the FCPDNP as a non-profit corporation are neither persuasive nor dispositive.

{¶ 123} Relators also cite case law pertaining to piercing the corporate veil which does not apply here.  There are no shareholders to hold liable.  To the extent that this law can be considered by way of analogy, the magistrate finds that PERB's analysis and conclusions concerning control adequately addressed this argument.

{¶ 124} Relators also assert that in *State ex rel. Kura v. Public Emp. Retirement Bd.,* 10th Dist. No. 01AP-58 (Dec. 20, 2001)(memorandum decision),[4]  (which was later vacated after the case settled), this court held that James Kura was a public employee from July 1976 through October 1992 when Kura left the FCPDNP and began employment with the Ohio Public Defender.  Kura's widow was attempting to collect from PERS a refund of employee contributions which should have been made during his service with the FCPDO (1976-1984) and with the FCPDNP (1985 - October 1992).  Following the Supreme Court's decision in *Mallory*, the Commissioners remitted

---

[4] The judgment entry, memorandum decision and writs of executions heretofore issued by this court on December 20, 2011, are set aside and shall not be binding on the parties or of prospective precedential effect.

employer and employees' contributions for employees of the FCPDO but not for Kura. This court found that Kura should have been treated the same as the other employees affected by the court's decision in *Mallory*. Relators argue that, pursuant to Federal case law, this court should reinstate its decision and assert that this court already answered the dispositive question when it found that Kura was a "public employee." As such, relators assert that this court has previously ruled that employees of both the FCPDO and the FCPDNP are public employees entitled to participate in PERS

{¶ 125} Relators take the magistrate's statement that Kura was a "public employee" during his tenure with the FCPDO and FCPDNP out of context. This court simply indicated that PERS had abused its discretion when it failed to treat Kura the same as other similarly situated employees following the *Mallory* decision. As such, he too would have been a carry-over employee following the incorporation of the FCPDNP

{¶ 126} The final argument raised by relators is that PERB failed to comply with the law of the case. Specifically, relators contend that PERB refused to and failed to consider all the evidence in this case and failed to truly consider their arguments. In making this argument, relators point to a portion of one paragraph in the report and recommendation. However, in taking certain isolated sentences and considering them out of context, relators' argument does not accurately represent the report and recommendation.

{¶ 127} Relators point to the following two sentences from the report and recommendation of the hearing examiner:

> While the mandate now before the Board expressly directs an analysis of the arguments presented by the Claimants... that mandate cannot and does not authorize the OPERS Board to exceed the limits of its enabling authority. The OPERS Board does not have equitable powers - it is not a judicial-branch adjudicator. If the second prong of the Claimants' arguments requires the Board to grant relief upon grounds not authorized by Chapter 145 of the Ohio Revised Code, then the Board has an affirmative obligation to reject that argument.

(Relator's brief, at 81.)

{¶ 128} Taken in isolation, the above sentences give the impression that PERB was refusing to follow the mandate of this court and the Supreme Court when PERB was

ordered to consider all relators' arguments. However, relators' characterization is not accurate.

{¶ 129} As indicated earlier in this decision, PERB specifically noted that relators sought to establish two overreaching points. Relators sought to establish that the FCPDNP created in 1984 was a sham, that its founders had the legal obligation to perform the duties of the corporation, that the corporation was not their employer, and that they were public employees working for either the FCPDC or for Franklin County itself. The second point advanced by relators was that the decision of the FCPDC to establish the FCPDNP to carry out the statutory duties of the public defender led to adverse consequences which PERS should now be required to mitigate.

{¶ 130} The sentences quoted by relators from the report and recommendation focus on the second point and PERB did not abuse its discretion in finding that it did not have authority to fashion a remedy for relators in the event that relators failed to establish their first point, i.e., that they were actually public employees employed by a public employer, either the FCPDC or Franklin County itself. Nothing in the decision of this court or the Supreme Court gave PERB the authority to fashion a remedy in the absence of a finding that relators were actually public employees.

{¶ 131} The entire quote from the report and recommendation provides:

> In noting the nature of this two-pronged body of evidence, however, the OPERS Board must recognize the limits of its authority. The appellate court decisions make it clear that the courts expect the OPERS Board to evaluate all of the arguments presented by the Claimants. This report endeavors to fulfill that mandate, and the Board should proceed with the confidence that each argument raised in the period leading up to today has been considered when making this report. At the same time, it is critically important that the parties be assured that the Board acts only within the limits of its authority. The OPERS Board is authorized to act by the provisions of O.R.C. Chapter 145, and is bound to limit its action based on the powers granted to it by the Ohio General Assembly. While the mandate now before the Board expressly directs an analysis of the arguments presented by the Claimants (and specifically calls for the Board to consider the alter-ego theories advanced by the Davis group in the course of the mandamus action), that mandate cannot and does not authorize the OPERS Board to exceed the limits of

its enabling authority. The OPERS Board does not have equitable powers - it is not a judicial-branch adjudicator. If the second prong of the Claimants' arguments requires the Board to grant relief upon grounds not authorized by Chapter 145 of the Ohio Revised Code, then the Board has an affirmative obligation to reject that argument. Doing so may perpetuate the dichotomy created by the decision to operate as a non-profit and to leave OPERS from 1985 to 1998; and it may leave the Claimants understandably angry. **But if this employer was not a public employer during this period, the OPERS Board has a statutory obligation to affirm the decision of its senior staff, and deny these claims.**

(Emphasis added.) (Report and Recommendation of Hearing Officer.)

{¶ 132} The magistrate does not dispute the fact that the outcome is not fair. In fact, no one disputes the fact that the outcome is not fair. However, while relators argue that the sole reason for establishing and contracting with a non-profit corporation to provide legal services to indigent criminal defendants was so that the county could avoid enrolling claimants in PERS, all the evidence reviewed beginning with the first meeting where the matter was first discussed, leads to one conclusion: because of the perceived conflict of interest in having the county both prosecute criminal defendants and defend criminal defendants, steps were taken to create a private entity with whom the county would contract for those services.

{¶ 133} There has never been any dispute that the Legal Aid Society was, in fact, a private entity. The determination was made that it was advantageous and preferable to keep separate the prosecuting of and the defending of criminal defendants. As such, the FCPDO was originally created in 1976. The fact that the Supreme Court ultimately determined that the proper steps were not taken to ensure that the FCPDO was a private employer and not a public employer does not change the fact that this was the initial and ultimate goal. Further, the record shows that when it was determined that the FCPDO was not legally constituted, steps were taken to correct the problem before the Supreme Court rendered its decision in *Mallory*. The magistrate finds that the steps taken to correct the failings identified by the court in *Mallory* were sufficient and corrected the failings and that PERB did not abuse its discretion by finding that relators were not public

employees and were not entitled to membership and service credit in PERS from 1985 through 1999.

{¶ 134} At oral argument, counsel for relator Marylou Altman-Bates raised an issue addressed earlier. Counsel continues to assert that records have been destroyed and PERS has failed in its duty to preserve the record. As ordered by the magistrate, respondents prepared a CD of the record. Counsel for relators was given time to review the record and to inform the magistrate if any documents were missing. This way, a complete record could be presented. Counsel did not come forward to challenge the evidentiary record and the magistrate finds it disingenuous for counsel to again raise this issue at this time.

{¶ 135} Finding that PERB did not abuse its discretion, it is this magistrate's decision that this court should deny relators' request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


### NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).