[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.,* Slip Opinion No. 2016-Ohio-3100.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-3100

THE STATE EX REL. ALTMAN-BATES ET AL., APPELLANTS, *v*. PUBLIC EMPLOYEES RETIREMENT BOARD ET AL., APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.,* Slip Opinion No. 2016-Ohio-3100.]

*Mandamus—Writ sought to compel Public Employees Retirement Board to grant relators service credit in the Public Employees Retirement System for their employment with the Franklin County Public Defender's Office prior to January 1, 1999—Court of appeals' judgment reversed in part and vacated in part; writ granted in part and cause remanded.*

(No. 2014-0650—Submitted November 17, 2015—Decided May 24, 2016.)

APPEAL from the Court of Appeals for Franklin County,

No. 11AP-196, 2014-Ohio-1183.

_____

**Per Curiam.**

{¶ 1} Appellants, Marylou Altman-Bates, Amy Neyerlin, Rebecca Steele, and Melani Anderson, are attorneys employed by the Franklin County Public Defender. In this mandamus action, they seek membership and service credit in the Ohio Public Employees Retirement System ("PERS") for their years of service prior to January 1, 1999, and they challenge a decision of the Ohio Public Employees Retirement Board ("the board") denying the service credit. The Tenth District Court of Appeals refused to grant the writ.

{¶ 2} For the reasons explained below, we deny Neyerlin's motion for oral argument and grant a writ of mandamus to compel the board to award service credit to Altman-Bates, Neyerlin, and Steele. We remand the matter to the court of appeals for further proceedings in light of the analysis herein.

*Summary of the issue*

{¶ 3} Persons hired by the Franklin County Public Defender on or before December 31, 1984, are public employees entitled to PERS benefits. *State ex rel. Mallory v. Pub. Emps. Retirement Bd.*, 82 Ohio St.3d 235, 241, 694 N.E.2d 1356 (1998). And effective January 1, 1999, the Franklin County Public Defender's employees have been enrolled in and considered to be members of PERS. The question presented is whether employees hired from January 1, 1985, through December 31, 1998, are entitled to service credit for their years of service prior to 1999.

*History*

{¶ 4} Effective in January 1976, the General Assembly enacted the Ohio Public Defender Act (R.C. Chapter 120), Am.Sub.H.B. No. 164, 136 Ohio Laws, Part I, 1868, which authorized counties to create five-member county public-defender commissions. R.C. 120.13(A). Once a county public-defender commission was created, the commission was required to appoint an individual to

the office of county public defender. Former R.C. 120.14(A)(1), 136 Ohio Laws, Part I, at 1876.

{¶ 5} On January 8, 1976, the Franklin County Board of Commissioners approved a resolution creating the Franklin County Public Defender Commission ("the commission"). Later that year, the county commissioners approved a resolution to enter into a six-month agreement with the newly created commission for the representation of indigent criminal defendants.

{¶ 6} The commission appointed James Kura to the statutory office of Franklin County Public Defender in 1977. Kura hired attorneys and other employees to form the Franklin County Public Defender's Office ("the office"). *Mallory*, 82 Ohio St.3d at 236, 694 N.E.2d 1356. The office and its employees paid Social Security taxes on wages. *Id*. Kura and the commission did not consider the office to be a county agency, and therefore office employees were not treated as "public employees" for purposes of PERS. *Id*.

{¶ 7} Various state officials soon called into question the legality of the manner in which some county public-defender offices were operating. In 1980, the section chief of the Administrative Agencies Section of the Ohio Attorney General's office issued an informal opinion concluding that employees of county public-defender offices were county employees and should be enrolled in PERS. *Mallory* at 237. And based on that opinion, the state auditor informed officials in Summit County (the only county besides Franklin County to treat such persons as private employees) that the county's public-defender office was operating illegally and was not entitled to state reimbursement for its operations. *Id.* at 236-237.

{¶ 8} To address these concerns, the General Assembly enacted R.C. 120.14(F) in 1984, Am.Sub.S.B. No. 271, 140 Ohio Laws, Part I, 949, 956-957, and also made other changes to R.C. Chapter 120, including within R.C. 120.14. The new provision, R.C. 120.14(F), allowed county public-defender commissions to contract with nonprofit organizations to provide legal services for the indigent.

In late 1984, private counsel hired by the commission drafted articles of incorporation for an entity to be called "Franklin County Public Defender" ("the corporation"). The articles of incorporation identified the commission as the incorporator and the sole member of the corporation, named the five then-current members of the commission as the initial trustees, and mandated that only an appointed commission member could serve as a trustee. On January 9, 1985, the commission approved the articles and appointed Kura, who at that time held the statutory office of Franklin County Public Defender, as the director of the corporation.

*The* Mallory *litigation*

{¶ 9} Diane Mallory was employed by the office as a law clerk from June 1978 until September 1980 (i.e., before the creation of the nonprofit corporation) and then as an attorney from February 1982 to January 1994. During these times, she and the commission paid Social Security taxes on her wages, and no PERS contributions were made by her or on her behalf. In September 1994, she filed a request with PERS for service credit. The PERS staff denied her claim on the grounds that she was not a "public employee," and the PERS board affirmed. *Mallory*, 82 Ohio St.3d at 237-238, 694 N.E.2d 1356.

{¶ 10} Holding that the board abused its discretion, we granted a writ of mandamus. *Id*. at 240. We held that employees hired prior to the 1985 incorporation (referred to in the opinion as "pre-1984" office employees) were public employees, because they "were employed by a county agency (the commission) and a county officer (Franklin County Public Defender Kura) to perform a governmental function" and because the office was created pursuant to statutory authority. *Id*. at 241.

{¶ 11} The board had argued that the office was a private entity with which Kura had contracted for services and thus that Mallory was not a public employee. We rejected that argument for two reasons. First, there was no evidence before us

4

of a written or oral contract between Kura and the office. *Id*. at 242. And second, if such a contract existed, it would have been invalid under R.C. 2921.42(A)(4), which prohibits a public official from having an interest in the profits or benefits of a public contract entered into by the public entity with which the official is connected. In reversing the judgment of the court of appeals, we stated:

> In concluding that Kura had contracted with a private organization known as the [Franklin County Public Defender's Office], the court of appeals neglected to consider that a clear conflict of interest would have existed if Kura, acting in his official capacity as the Franklin County Public Defender, was permitted to determine the adequacy of services provided to the county by the "private agency" Kura himself directed.

*Mallory* at 242.

{¶ 12} Finally, we held that Mallory was entitled under R.C. 145.01(A)(2) to continue her PERS membership after the incorporation following the 1984 amendments to R.C. 120.14. *Id*. at 245. Mallory and others in her situation are sometimes referred to as "carryover employees." However, we were not called upon in *Mallory* to address the status of employees hired for the first time after the corporation was formed pursuant to the 1984 amendments to R.C. 120.14.

{¶ 13} In the wake of *Mallory*, the "Franklin County Public Defender" was declared a county agency, effective January 1, 1999. The date of hire of all employees hired after December 31, 1984, and working at that time was changed to January 1, 1999. And from that point forward, all employees were enrolled in PERS. Therefore, only those employees hired from January 1, 1985, through December 31, 1998, have been excluded from consideration as public employees,

and hence not covered by PERS, at least for the period of their service before January 1, 1999.

*The current litigation*

{¶ 14} In February 2001, 51 current and former employees filed for PERS membership and service credit for their employment prior to 1999. In September 2003, PERS staff rejected the claims based on the assumption that this court had already ruled that post-1984 hires were not eligible for PERS coverage prior to January 1, 1999, in *State ex rel. Van Dyke v. Pub. Emps. Retirement Bd.*, 99 Ohio St.3d 430, 2003-Ohio-4123, 793 N.E.2d 438. After an administrative hearing, the hearing examiner also concluded that the claimants were collaterally estopped from challenging the private status of the nonprofit corporation by virtue of *Van Dyke*. On that basis, the board denied the claims.

{¶ 15} The claimants then filed an action for a writ of mandamus in the Tenth District Court of Appeals, and that court granted a limited writ and directed the board to issue a new order adjudicating the claims on their merits. This court affirmed, holding that collateral estoppel did not apply. *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 120 Ohio St.3d 386, 2008-Ohio-6254, 899 N.E.2d 975, ¶ 36. In *Davis*, we noted that the only issue in *Van Dyke* had been whether the sole employee bringing that case, who had worked as a staff attorney during two separate time periods, was eligible for PERS service credit during the second time period as a carryover employee. *Davis* at ¶ 6-9, 43. We stated in *Davis* that "we did not actually decide [the office's] postincorporation status in either *Van Dyke* or *Mallory*." *Davis* at ¶ 36.

{¶ 16} Proceedings resumed before the board, and the claimants presented additional evidence. A hearing examiner issued a report and recommendation to the board concluding that during the relevant time period, the claimants were employed by a nonprofit corporation, not by a public employer. The hearing

6

examiner recommended to the board that it should deny the claims for PERS coverage.

{¶ 17} On March 17, 2010, the board voted to accept the report's findings of fact and conclusions of law. The board declared that

> the Franklin County Public Defender was a non-profit corporation that employed Claimants to provide public defender services and was not a public employer for OPERS purposes, and therefore Claimants are not public employees for the time period December 31, 1984 to January 1, 1999.

{¶ 18} Altman-Bates, Neyerlin, and Steele filed a mandamus action in the Tenth District Court of Appeals. The court of appeals' magistrate granted Anderson leave to intervene as an additional relator. On April 30, 2013, the magistrate issued a decision concluding that the board did not abuse its discretion when it denied the claims for coverage and recommending that the writ be denied. The court of appeals overruled objections, adopted the magistrate's findings of fact and conclusions of law, and denied the writ. The four claimants timely appealed.

*Motion for oral argument*

{¶ 19} Oral argument in a direct appeal is discretionary. S.Ct.Prac.R. 17.02(A). In exercising this discretion, we consider whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among the courts of appeals. *State ex rel. Manley v. Walsh*, 142 Ohio St.3d 384, 2014-Ohio-4563, 31 N.E.3d 608, ¶ 16. Notwithstanding the long procedural history recited above, we conclude that oral argument is unnecessary, and we deny the motion.

*Governing law and standard of review*

{¶ 20} Membership in PERS is compulsory for every "public employee," except for those employees who come under a few statutory exclusions that are inapplicable here. R.C. 145.03(A); 145.01(B); *State ex rel. Lucas Cty. Bd. of Mental Retardation & Dev. Disabilities v. Pub. Emps. Retirement Bd.*, 123 Ohio St.3d 146, 2009-Ohio-4694, 914 N.E.2d 1038, ¶ 18. The definition of "public employee" includes "[a]ny person who is an employee of a public employer." R.C. 145.01(A)(3). The definition of "public employer" includes any county, as well as boards, commissions, and administrative bodies created by state law or by a county. R.C. 145.01(D).

{¶ 21} A decision of the board whether any person is a "public employee" is final. R.C. 145.01(A). Because there is no statutory right to appeal a decision of the board on this question, mandamus is the appropriate remedy. *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, 938 N.E.2d 1028, ¶ 13.

{¶ 22} To show they are entitled to a writ of mandamus, appellants must establish that the board abused its discretion. *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, 17 N.E.3d 569, ¶ 14. An abuse of discretion occurs when a decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 122 Ohio St.3d 148, 2009-Ohio-2522, 909 N.E.2d 610, ¶ 11. The board has not abused its discretion if there is "some evidence" to support its determination. *State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 26-27; *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19.

{¶ 23} At this stage in the proceedings, our task is to review the decision of the court of appeals to determine if *it* abused its discretion in denying the writ. *State*

*ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, 22 N.E.3d 1040, ¶ 24.

*Legal analysis*

{¶ 24} In *Mallory*, the case in which we considered the status of the "pre-1984" employees, the record contained no contracts between the holder of the statutory office, Kura, and the office itself. 82 Ohio St.3d at 242, 694 N.E.2d 1356. By contrast, after the 1984 changes to R.C. 120.14 and the subsequent formation of the corporation, the statutory office and the corporation did execute formal written agreements. This fact alone, however, is not dispositive. In *Mallory*, this court held that it would have been a violation of R.C. 2921.42 for Kura, the appointed officeholder, to contract for services with a private agency of which he was also the director. *Id.* According to appellants, the same problem persisted after the formation of the corporation, because Kura never resigned his statutory office. To the board, on the other hand, these contracts are critical evidence that there was a formal distinction between the statutory office and the corporation.

{¶ 25} The record contains two relevant contracts, both dated May 13, 1987. Under the first contract, the corporation agreed to assume the commission's responsibilities for providing county public-defender services. The second contract was a subcontracting agreement for the corporation to provide public-defender services pursuant to a contract the commission had previously entered into with the city of Columbus. Both agreements were signed by H. Ritchey Hollenbaugh, as chairman of the commission, and by Kura, as "Director" of "Franklin County Public Defender."[1] The dispositive question is, what position did Kura hold at the time?[2]

---

[1] Another contract in the record, dated March 14, 1985, a subcontracting agreement for the corporation to fulfill obligations the commission had agreed to undertake for the city of Columbus, could potentially be relevant, but it is unsigned.

[2] The board contends that a number of appellants' arguments, which would include the argument raising the question of Kura's status, were not timely raised and have therefore been waived.

**{¶ 26}** Kura was appointed to the statutory office of Franklin County Public Defender in 1977. At the time of his appointment, if a county chose to create a county public-defender commission, then that commission had a statutory duty to appoint a county public defender (an officeholder), who could be removed from office only for good cause. Former R.C. 120.14(A), Am.Sub.H.B. No. 164, 136 Ohio Laws, Part I, 1876.

**{¶ 27}** R.C. 120.14(F) was enacted in 1984 to allow counties to contract for public-defender services with private entities. At that time, R.C. 120.14(A) was amended to state:

> (1) Except as provided in division (A)(2) of this section, the county public defender commission shall appoint the county public defender and may remove him from office only for good cause.
>
> (2) If a county public defender commission contracts * * * with one or more nonprofit organizations for * * * the organizations to provide all of the services that the county public defender is required or permitted to provide by this chapter, the commission shall not appoint a county public defender.

Am.Sub.S.B. No. 271, 140 Ohio Laws, Part I, 955. As Anderson and Steele correctly point out in their brief, the statute continued to provide (as it does today) that the commission could remove the appointed statutory official only for good cause.

---

However, both the court of appeals' magistrate and the Tenth District considered the question of Kura's status on its merits, *see* 2014-Ohio-1183, at ¶ 62-63, 116, 120, rejecting by implication the board's waiver contention as it pertains to this argument. We hold that it was not an abuse of discretion to consider Kura's status.

{¶ 28} The board concedes that "there is no formal resolution by the [commission] (at least in the record) dissolving the office of the Franklin County Public Defender." Nor is there any evidence or allegation that Kura resigned the office in 1985 or was ever removed for cause prior to the end of his tenure.

{¶ 29} Instead, the evidence shows that Kura held two positions simultaneously. On March 14, 1984, prior to the creation of the corporation, the members of the commission reappointed Kura to a four-year term as the statutory Franklin County Public Defender. Ten months later, the trustees of the newly created corporation discussed appointing Kura to serve as the corporation's director. A motion was made and seconded to extend to Kura a contract for a period of four years. According to the minutes of the meeting:

> Jerry [Simmons] asked if Jim [Kura] was just appointed to a four year term not * * * long ago. It was then suggested to ratify the existing term of four years. It was then moved by Ritch [Hollenbaugh] that the board of trustees ratify the existing four year contract, subject with right to remove with cause.

The motion passed unanimously, and Kura accepted the terms. Gerald Simmons, who at the time served as chairperson of the commission and a trustee of the corporation, later attested that "[w]e reaffirmed James Kura's appointment as Franklin County Public Defender at the same time that we approved the establishment of the nonprofit corporation."[3]

{¶ 30} Based on this evidence, we hold that the court of appeals abused its discretion for two reasons. First, the court of appeals based its ruling on the assumption that "there was no person holding the office of Franklin County Public

---

[3] There likewise is no evidence or allegation that Kura resigned the statutory office when he was appointed to another four-year term in 1988.

Defender between 1985 and 1999. Rather, that person was appointed as the 'Director' of the [corporation]." 2014-Ohio-1183, at ¶ 62. The court's assumption is not supported by the record. Second, the court of appeals made an error of law by disregarding the plain language in R.C. 120.14(A)(1) that the commission may remove an appointed public defender only for good cause.

{¶ 31} Because Kura was a county official at the same time he was director of the corporation, the employees of that corporation who were hired while he held the statutory office were employed by a public official, and hence, they were public employees. *See Mallory*, 82 Ohio St.3d at 241, 694 N.E.2d 1356. Kura resigned his position in October 1992. The record shows that three of the appellants in this case were hired during his tenure. Altman-Bates was hired in July 1992. Neyerlin was employed from June 1987 to October 1989, and she was rehired in August 1990. Steele started as a law clerk in 1989 and became an attorney in 1990.[4] Accordingly, these three appellants are entitled to PERS service credit for their service prior to January 1, 1999, and we reverse the judgment of the court of appeals and grant the writ as to these appellants.

{¶ 32} Anderson intervened in this case as an additional relator at the court of appeals, and her date of hire is not in the record before us. It is possible that she was hired during the tenure of one of Kura's successors, and there is almost no evidence in the record regarding those successors' appointments. We therefore vacate the judgment of the court of appeals and remand the matter to the court of appeals for further proceedings as to her. We decline to consider at this time the other legal theories presented by appellants, including the claims that the corporation was the alter ego of, or was controlled by, the commission.

---

[4] The hearing examiner's report gives a slightly different date for Steele's hire, but the discrepancy is not material here.

*Conclusion*

**{¶ 33}** The judgment of the Tenth District Court of Appeals is hereby reversed in part and vacated in part, a writ of mandamus is granted to compel the board to award service credit to Altman-Bates, Neyerlin, and Steele, and the cause is remanded to the court of appeals for further proceedings as to Anderson.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, KEOUGH, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents with an opinion that LANZINGER and KENNEDY, JJ., join.

KATHLEEN ANN KEOUGH, J., of the Eighth Appellate District, sitting for FRENCH, J.

_____

**O'DONNELL, J., dissenting.**

**{¶ 34}** Respectfully, I dissent.

**{¶ 35}** In this case, four relators, Marylou Altman-Bates, Amy Neyerlin, Rebecca Steele, and Melani Anderson, appeal from a judgment of the Tenth District Court of Appeals which denied a writ of mandamus to compel the Public Employees Retirement Board to grant them service credit in the Public Employees Retirement System ("PERS") for the years 1985 to 1998. The court of appeals concluded that some evidence supported the board's decision that they were not public employees during their tenure with the Franklin County Public Defender's Office while it was organized as a private, nonprofit corporation.

**{¶ 36}** Our court is asked to determine whether the court of appeals abused its discretion when it concluded that the board did not abuse its discretion in denying a service credit to relators. *See State ex rel. Nese v. State Teachers Retirement Bd. of Ohio*, 136 Ohio St.3d 103, 2013-Ohio-1777, 991 N.E.2d 218, ¶ 55; *State ex rel. Schaengold v. Ohio Pub. Emps. Retirement Sys.*, 114 Ohio St.3d 147, 2007-Ohio-3760, 870 N.E.2d 719, ¶ 19.

**{¶ 37}** The parties seeking a writ of mandamus have the burden "to ' "demonstrate that there is plain, clear, and convincing evidence which would require the granting of the writ." ' " *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 55, quoting *State ex rel. Henslee v. Newman*, 30 Ohio St.2d 324, 325, 285 N.E.2d 54 (1972), quoting the court of appeals' opinion in that case. Clear and convincing evidence "is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶ 38}** Thus, mandamus will not lie as long as the board's decision is supported by at least "some evidence." *State ex rel. Domhoff v. Ohio Pub. Emps. Retirement Sys. Bd.*, 140 Ohio St.3d 284, 2014-Ohio-3688, 17 N.E.3d 569, ¶ 14; *Schaengold* at ¶ 19.

**{¶ 39}** The record reveals that the Franklin County Public Defender Commission appointed James Kura to the office of Franklin County Public Defender in 1977. From its inception, the public defender's office operated as a *nongovernmental* organization. As Kura explained,

> The decision to be non-county employees was made by the Board of County Commissioners and the Franklin County Public Defender Commission when our office split off from the Legal Aid Society of Columbus * * *. It was felt, as adversaries to the County Prosecutor's [Office], we should not be a part of the county government.

The commission and Kura therefore treated the Franklin County Public Defender's Office as a private entity, and its employees did not participate in PERS but rather participated in and made contributions to the Social Security system. *State ex rel.*

*Mallory v. Pub. Emps. Retirement Bd.*, 82 Ohio St.3d 235, 236, 694 N.E.2d 1356 (1998).

{¶ 40} Apparently, based on an informal opinion issued by a section chief of the attorney general's office, the state auditor determined that county public defender commissions lacked statutory authority to contract with nonprofit organizations because employees of county public defender offices were county employees. *Id*. at 236-237. Kura and the commission then sought new legislation from the General Assembly permitting nonprofit organizations to provide representation to indigent criminal defendants. *Id*. at 237. In the meantime, the minutes from a January 15, 1981 meeting of the Franklin County Public Defender Commission reveal that Kura had stated that he understood that if the office would

> remain non-county we would probably be under the appointed counsel system section of the law. * * * Further, as non-county the public defender commissioners would lose their commission status, that he (Jim [Kura]) would have to resign as the public defender and become, if appointed by the commissioners, as the director; that the Franklin County Public Defender Commission as it now is would become a Board of Directors for the organization.

Kura continued to treat the public defenders as private employees, relying on the belief that a "new amendment to R.C. Chapter 120 would include a provision retroactively legalizing the [public defender's office] operation as a private entity." *Mallory* at 237.

{¶ 41} In 1984, the General Assembly enacted the legislation Kura sought, specifically permitting county public defender commissions to contract with nonprofit organizations to provide indigent defense. R.C. 120.14(F), Am.Sub.S.B.

No. 271, 140 Ohio Laws, Part I, 949, 956-957.  However, the General Assembly did not make the statute retroactive.

{¶ 42} Pursuant to the newly enacted statute, the Franklin County Public Defender Commission incorporated the Franklin County Public Defender as a nonprofit corporation in January 1985, and the code of regulations governing the nonprofit provided for the corporation's trustees to elect a "President (also known as the Director)."  The minutes of the meeting where these changes were accomplished reflect that "as of January 9, 1985, *the office* of the Franklin County Public Defender became officially *a non-profit corporation*" and that the trustees had designated "James Kura, President (Director)."  (Emphasis added.)  Thus, it is manifest that the commission, with Kura's agreement, replaced the *public* office of the county public defender with a *private*, nonprofit corporation.

{¶ 43} The majority, however, relies on these same meeting minutes as proving that Kura served in dual capacities as both the county public defender and as director of the nonprofit corporation, explaining that in its view, the board of trustees ratified and extended Kura's term *as public defender* rather than dissolving that office or terminating his position for good cause.  Regrettably, the majority misreads the record, because the trustees were explicitly discussing Kura's "term as director"—not as public defender—and the minutes reveal that the "*Board of Trustees* approved unanimously this motion [to ratify Kura's existing contract] which was accepted by Jim [Kura]."  (Emphasis added.)

{¶ 44} Significantly, the board of trustees lacked statutory authority to appoint Kura to the office of county public defender, because R.C. 120.14(A)(1) grants that power only to the county public defender commission.  Further, both Kura and the trustees were aware that R.C. 120.14(A)(2) prohibited the public defender commission from contracting with a nonprofit organization to provide the services of the public defender at the same time that there was an appointed county public defender.

{¶ 45} The only reasonable reading of this evidence is that the office of the county public defender had been dissolved with Kura's agreement when he accepted the position of director of the nonprofit corporation, because the purpose of establishing a nonprofit corporation was to ensure that the office of the public defender was *not* a county agency and that its employees were *not* county employees. It is both material and relevant that the nonprofit corporation continued to treat its employees as private employees, making contributions to the Social Security system and to SEP-IRA accounts rather than to PERS—and a letter to Kura dated March 27, 1987, indicates that public defenders received contributions to SEP-IRA accounts to ensure that their combined employer contributions to the Social Security system and the SEP-IRA accounts would more nearly equal the employer contributions made to PERS for county prosecutors.

{¶ 46} And while the commission's minutes had previously referred to Kura as "Public Defender," after the incorporation of the nonprofit he was identified in subsequent meeting minutes and in correspondence only as "Director." Tellingly, the minutes of a meeting held before Kura's term ended in 1988 state that he was "reappointed as *director* of the office of the Franklin County Public Defender." (Emphasis added.) And according to a letter in the record written by Judith M. Stevenson, who later held that position, it was only when the Franklin County Public Defender "changed from a Not-For-Profit corporation to a County office as of January 1, 1999," that the director's title changed back to "Franklin County Public Defender."

{¶ 47} It is true, as the majority states, that there is no formal resolution in the record dissolving the office of the Franklin County Public Defender, nor does the record contain Kura's formal resignation or removal for cause. But the majority overemphasizes the importance of these facts and misapplies the standard of review. The Public Employees Retirement Board has no burden of proof in this court. The relators have the burden of proof and cannot rely on an absence of

evidence in the record to sustain their burden to affirmatively demonstrate that they were public employees entitled to participate in PERS. And not only does this record lack clear and convincing evidence that Kura held the office of county public defender while simultaneously serving as the director of the nonprofit corporation, but such a conclusion also runs contrary to R.C. 120.14(A)(2), which prohibited the commission from contracting with a nonprofit organization while there was an appointed county public defender. We should not presume that there was such a willing violation of the law, and there is at least some evidence that Kura and the county public defender commission replaced the office of the county public defender with a nonprofit corporation and that the relators, who did not contribute any funds to PERS during this time period, were not public employees.

{¶ 48} Thus, in my view, the court of appeals did not abuse its discretion in upholding the finding that employees of the Franklin County Public Defender's Office were not public employees from 1985 to 1998—the evidence shows they participated as private employees in the Social Security system and even received employer contributions to SEP-IRA accounts. The majority opinion pretends to retroactively change history by erroneously concluding that relators were public employees during that time. They were not. Accordingly, I would affirm the judgment of the court of appeals in this case.

LANZINGER and KENNEDY, JJ., concur in the foregoing opinion.

_____

John H. Bates, for appellant Marylou Altman-Bates.

Amy Neyerlin, pro se.

Rebecca Steele, pro se.

Melani Anderson, pro se.

Michael DeWine, Attorney General, and John J. Danish, Assistant Attorney General, for appellee Ohio Public Employees Retirement Board.

Ron O'Brien, Franklin County Prosecuting Attorney, Nick A. Soulas Jr., First Assistant Prosecuting Attorney, and Denise DePalma, Assistant Prosecuting Attorney, for appellee Franklin County Board of Commissioners.

_____