[Cite as *State ex rel. Ewart v. State Teachers Ret. Sys. Bd. of Ohio*, 2020-Ohio-4147.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Teresa Ewart, | : | |
| Relator-Appellant, | : | No. 20AP-21 |
| | | (C.P.C. No. 17CV-11214) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| State Teachers Retirement System Board of Ohio, | : | |
| | : | |
| Respondent-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on August 20, 2020

**On brief:** *Jones Law Group, LLC,* and *Eric A. Jones*, for appellant. **Argued:** *Eric A. Jones.*

**On brief:** *Dave Yost*, Attorney General, and *Samuel A. Peppers, III*, and *Mary Therese J. Bridge*, for appellee. **Argued:** *Mary Therese J. Bridge.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Relator-appellant, Teresa Ewart, appeals from a decision and entry of the Franklin County Court of Common Pleas denying her request for a writ of mandamus ordering respondent-appellee, State Teachers Retirement System Board of Ohio ("STRB") to reinstate Ewart's disability benefits. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} Ewart, a member of the State Teachers Retirement System ("STRS"), worked as an eighth-grade science teacher in a public school system. In May 2014, after undergoing surgery to remove scar tissue from her vocal cords and additional treatment in the form of oral steroids and steroid injections into her vocal cords, Ewart submitted a disability benefit

application for "chronic laryngitis" and "vocal cord scar." (Record of Proceedings at E2849-G80.) Ewart stated in her application that she suffers from "intense" throat pain if she speaks for more than an hour. (Record of Proceedings at E2849-G80.) In support of her disability application, Ewart submitted a May 12, 2014 report from her attending physician, Dr. Paul Bryson, an otolaryngologist, indicating that her conditions were permanently disabling "from a voice standpoint." (Record of Proceedings at E2849-G96.) Dr. Bryson certified his opinion that Ewart "is currently" incapacitated and the disability "is currently" considered to be permanent. (Record of Proceedings at E2849-G95, 96.)

{¶ 3} Upon receiving Ewart's application, the medical review board of STRS asked Dr. L. Arick Forrest to serve as an independent medical physician in the case. Dr. Forrest examined Ewart in June 2014, performing a laryngoscopy. In a recommendation following the examination, Dr. Forrest opined that Ewart's hoarseness and voice changes were consistent with vocal cord scarring and that, while it would be difficult for Ewart to return to work, her condition "should be considered a short-term disability (3-6 months)" in order to evaluate Ewart's response to therapy. (Record of Proceedings at E2849-H5.) It was Dr. Forrest's opinion following the June 2014 examination that Ewart should not be considered or presumed permanently incapacitated.

{¶ 4} Following Dr. Forrest's recommendation, the STRS medical review board advised Ewart undergo a treatment period of six months prior to STRS making a determination on disability. In September 2014, Dr. Bryson provided updated documentation to STRS stating that although he had performed a left vocal cord injection on Ewart that seemed to initially improve the condition of her hoarseness, the benefit of the procedure diminished upon Ewart's subsequent return to teaching. At the end of October 2014, Dr. Bryson performed a surgical procedure known as a left medialization laryngoplasty on Ewart. Dr. Bryson reported that the surgical procedure resulted in some improvement to Ewart's glottic closure. However, at a subsequent follow-up visit in January 2015, Dr. Bryson noted that Ewart continued to suffer from "chronic hoarseness and recurrent vocal fold inflammation * * * despite maximal medical therapy and surgical therapy." (Record of Proceedings at E2849-H23.)

{¶ 5} Dr. Forrest then conducted another examination of Ewart in February 2015, performing another laryngoscopy. His impression following that exam was that while

Ewart's hoarseness and degree of pain were disproportionate to the physical findings of the exam, it would nonetheless be "difficult" for Ewart to return to work in her current condition.  (Record of Proceedings at E2849-H34.)  Dr. Forrest again opined that Ewart's condition should be considered a short-term disability in order to further evaluate the cause or source of the pain, and he certified his opinion that Ewart is not disabled.

{¶ 6}    Subsequently, STRS asked a three-physician panel comprised of Drs. James Allen, Albert Kolibash, and Barry Friedman to review Ewart's records along with the recommendations of Drs. Bryson and Forrest.  Following their independent reviews, Drs. Allen and Friedman favored granting disability with a recommendation to reevaluate Ewart in one year.  Dr. Kolibash expressed concerns with Ewart's ability to perform her teaching responsibility and requested to discuss options with the STRS medical review board prior to making his final recommendation.  In an April 14, 2015 letter, the STRS medical review board recommended granting disability benefits, and STRB granted Ewart disability retirement benefits with an effective date of April 1, 2015.

{¶ 7}    In 2016, Drs. Bryson and Forrest both reevaluated Ewart.  Dr. Bryson provided a report following his May 4, 2016 examination and laryngoscopy that Ewart's voice remains severely hoarse, that her prognosis for recovery was poor, and that it was his opinion that Ewart would not be able to return to the prior vocal demands of teaching.

{¶ 8}    Dr. Forrest conducted his reexamination on August 15, 2016, including a physical exam and a laryngoscopy.  In an August 22, 2016 report, Dr. Forrest stated that Ewart's hoarseness and degree of pain are disproportionate to the physical findings from the exam, and he opined that her condition should be considered a short-term disability. Dr. Forrest certified that Ewart was not capable of resuming her job and that disability benefits should be continued, but he stated he did not presume her disability to be permanent.

{¶ 9}    Upon receiving the opinions of Drs. Bryson and Forrest, STRB requested an independent psychiatric evaluation of Ewart from Dr. Joel Steinberg.  After a September 2016 exam and a review of her medical records, Dr. Steinberg opined that while it is possible that the source of Ewart's pain is psychological, he thought it was more likely that her pain and resulting limitations were the causes of her psychological distress.  Dr. Steinberg

certified that, on a psychiatric basis alone, Ewart is capable of resuming her job and that her disability benefits should not continue.

{¶ 10} Dr. Forrest then conducted another reexamination of Ewart on January 9, 2017. Although there is no indication in his report that he conducted a new laryngoscopy, Dr. Forrest opined that Ewart's hoarseness and pain are still disproportionate to the physical findings but that the conditions could be a result of "compensatory muscle tension dysphonia." (Record of Proceedings at E2849-H83.) He further concluded that it would be difficult for Ewart to return to work "from a psychological perspective." (Record of Proceedings at E2849-H83.) Dr. Forrest then certified that Ewart was not capable of resuming her job and that her disability benefits should be continued. On the form asking whether Ewart's subjective complaints and symptoms correlate with medical evidence, Dr. Forrest checked the box for "yes." (Record of Proceedings at E2849-H85.)

{¶ 11} The STRS medical review board then asked Dr. Forrest to clarify his opinion, asking in a January 24, 2017 letter "[f]rom an ENT perspective only" whether Ewart has "objective painful dysphonia that would interfere with her functioning as a teacher?" (Record of Proceedings at E2849-H86.) Dr. Forrest then submitted a new reexamination form dated February 21, 2017 indicating Ewart was capable of resuming regular full-time service similar to that from which she was retired and that her disability benefits should not be continued. On the new reexamination form, when asked whether Ewart's subjective complaints and symptoms correlate with medical evidence, Dr. Forrest checked the box for "no" and further stated "[o]n medical exam, there is no evidence that [Ewart] cannot teach. Her only limitation is her perception of pain with speaking." (Record of Proceedings at E2849-H88.)

{¶ 12} A panel of three physicians comprised of Dr. Allen, Dr. Marc Cooperman, and Dr. Jeffery Hutzler then reviewed all of Ewart's medical records and the various recommendations from the examining physicians. Initially, Dr. Cooperman concluded Ewart remained disabled, though he believed it possible that her condition would improve with therapy and thus recommended repeat examination in one year. Dr. Allen, in a March 7, 2017 letter, found no objective evidence of a laryngeal or psychiatric condition that prevents Ewart from returning to work, instead finding it "difficult to justify disability as a teacher purely on a pain diagnosis." (Record of Proceedings at E2849-H92.) Dr. Allen

favored terminating disability benefits but recommended a special conference of the STRS medical review board to discuss the matter. In a March 8, 2017 letter, Dr. Hutzler concluded that Ewart's pain and hoarseness were based primarily on a psychiatric disorder, that Ewart is not disabled from a psychiatric standpoint, and that Ewart is capable of returning to work and that her benefits should not be continued.

{¶ 13} The STRS medical review board then met in a special conference to consider Ewart's reexamination. By three separate letters dated March 20, 2017, Drs. Cooperman, Allen, and Hutzler all indicated that the STRS medical review board voted unanimously to terminate Ewart's disability benefits. Dr. Allen wrote in his March 20, 2017 letter that the STRS medical review board noted at their special conference that Ewart's laryngoscopies have not demonstrated an objective basis for her hoarseness and throat pain. Dr. Allen concluded that Ewart has a chronic pain syndrome that does not correlate to significant structural laryngeal abnormalities and is not sufficient to warrant disability benefits.

{¶ 14} On April 4, 2017, Dr. Bryson provided a letter to STRS reiterating his opinion that Ewart is vocally disabled. Subsequently, on April 20, 2017, STRB took official action to terminate Ewart's disability benefits for the condition of "hoarseness" under R.C. 3307.48, effective August 31, 2017.

{¶ 15} Ewart filed an administrative appeal from the termination decision, submitting additional medical records from Dr. Bryson and from a mental health practitioner, Dr. David Brinkman-Sull. Additionally, Ewart requested a hearing pursuant to Ohio Adm.Code 3307:1-7-05. The STRS medical review board reviewed Ewart's case, including the new medical data she submitted, and requested an additional independent medical examination from Dr. Blaize O'Brien. The STRS medical review board further requested Dr. Steinberg to review the additional material Ewart submitted in support of her administrative appeal.

{¶ 16} Dr. O'Brien then conducted a physical examination and laryngoscopy on Ewart on June 21, 2017, revealing a "[s]light glottic gap" of the right true vocal cord but no other abnormalities. (Record of Proceedings at E2849-I79.) Dr. O'Brien then concluded that Ewart was not medically incapacitated, indicating that while there is medical evidence to correlate with Ewart's subjective complaints and symptoms, the findings on Ewart's physical exam "do not correlate well with the degree of impairment that she is

experiencing." (Record of Proceedings at E2849-I78.) Because he found nothing on the exam that would preclude Ewart from returning to teaching, Dr. O'Brien certified that Ewart is capable of resuming regular full-time service similar to that from which she retired and that disability benefits should not be continued.

{¶ 17} Dr. Steinberg then reviewed the entire file, including the additional material Ewart submitted along with her administrative appeal, and certified his previous opinion that, on a psychiatric basis alone, Ewart is capable of returning to service and her disability benefits should not be continued.

{¶ 18} On August 16, 2017, the STRS disability review panel conducted a hearing on the termination of Ewart's disability benefits. The following day, August 17, 2017, STRB took official action to affirm its prior decision to terminate the benefits.

{¶ 19} Ewart then filed a complaint in mandamus with the trial court on December 20, 2017, asking the court to compel STRB to reinstate her disability benefits on a continuing and retroactive basis. In a September 26, 2018 judgment entry, the trial court determined the STRB decision was not supported by "some evidence" and that Ewart was entitled to the requested writ. Specifically, the trial court found the opinions on Ewart's mental health were not relevant to whether she remained disabled for her voice disorder. Accordingly, the trial court determined Dr. Steinberg's opinion did not support termination of Ewart's benefits. Moreover, the trial court concluded that it could not consider Dr. O'Brien's report at all based on STRB's failure to return the record for review and recommendation by the medical review board. Finally, the trial court found STRB could not rely on Dr. Forrest's report because it did not contain either a marked objective change in Ewart's vocal cord condition or a substantive change in Dr. Forrest's opinion from the time STRB granted the disability claim to when it terminated the disability claim.

{¶ 20} STRB appealed the trial court's decision granting the writ to this court. In a June 20, 2019 decision, we found the trial court did not abuse its discretion in finding the reports and opinions of Dr. Forrest and the opinion of Dr. Steinberg do not constitute some evidence to support termination of disability benefits. *State ex rel. Ewart v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 18AP-826, 2019-Ohio-2459, ¶ 33, 36. However, because we also concluded the trial court improperly disregarded Dr. O'Brien's opinion and because the trial court did not consider the March 7, 2017 letter from Dr. Allen or the

March 8, 2017 letter from Dr. Hutzler, we reversed the trial court's decision and remanded the matter to the trial court "to consider, in the first instance, whether the opinion of Dr. O'Brien, the March 7, 2017 letter from Dr. Allen, and/or the March 8, 2017 letter from Dr. Hutzler constitute some evidence to support the determination of STRB to terminate [Ewart's] disability benefits." *Id.* at ¶ 49, 53, 56.

{¶ 21} On remand, STRB filed a brief on November 14, 2019 arguing Dr. O'Brien's opinion along with the letters from Drs. Allen and Hutzler constituted some evidence to terminate Ewart's disability benefits. Ewart filed a reply brief on November 29, 2019 asserting Dr. O'Brien's report is equivocal and lacks probative value, Dr. O'Brien's report does not constitute "new evidence" as required by R.C. 3307.48, and the letters of Drs. Allen and Hutzler do not constitute "some evidence" within the meaning of R.C. 3307.48. STRB filed a reply on December 6, 2019.

{¶ 22} In a January 7, 2020 decision and entry, the trial court concluded that, upon consideration of the opinions of Drs. O'Brien, Allen, and Hutzler, STRB demonstrated that some evidence exists to support the termination of Ewart's disability benefits. Thus, the trial court determined STRB did not abuse its discretion in terminating Ewart's disability benefits and denied Ewart's requested writ of mandamus. Ewart timely appeals.

## II. Assignments of Error

{¶ 23} Ewart assigns the following errors for our review:

> 1. The Court of Common Pleas erred in finding the June 22, 2017 examination report of Dr. O'Brien to constitute "some evidence" to support the State Teachers Retirement System Board of Ohio's (STRB's) determination that Mrs. Ewart is no longer disabled.
>
> 2. The Court of Common Pleas erred in finding the examination report of Dr. O'Brien and the file review letters from Dr. Allen and/or Dr. Hutzler, who are members of the State Teachers Retirement System Medical Review Board, constitute "new evidence" in the record that Mrs. Ewart is no longer physically and mentally [incapable of returning to work] to support STRB's determination that Mrs. Ewart is no longer disabled.
>
> 3. The Court of Common Pleas erred in finding that letters from Dr. Allen and Dr. Hutzler, who are members of the State Teachers Retirement System Medical Review Board, constitute

independent medical examinations to support the State Teachers Retirement Board of Ohio's (STRB's) determination that Mrs. Ewart is no longer disabled.

### III. Standard of Review

{¶ 24} "The determination of whether a member of [STRS] is entitled to disability retirement benefits is solely within the province of the [STRB]." *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26; *State ex rel. Kelly v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 11AP-527, 2012-Ohio-4613, ¶ 9 (stating "[t]he board is deemed to know what a teaching job entails and whether the recipient is disabled from it"). "Because the [STRB] decision is not appealable, mandamus is available to correct an abuse of discretion by the board in its determination concerning disability-retirement benefits." *Hulls* at ¶ 27. An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983); *State ex rel. Altman-Bates v. Pub. Emps. Retirement Bd.*, 148 Ohio St.3d 21, 2016-Ohio-3100, ¶ 22.

{¶ 25} To be entitled to a writ of mandamus, a relator must show (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the respondent to provide such relief, and (3) the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Withers v. State Teachers Retirement Sys. of Ohio Bd.*, 10th Dist. No. 17AP-124, 2017-Ohio-7906, ¶ 19, citing *State ex rel. Brown v. Indus. Comm.*, 10th Dist. No. 14AP-722, 2015-Ohio-2923, ¶ 10. "Generally, a clear legal right exists where an administrative agency abuses its discretion by entering an order not supported by any evidence [in] the record; however, when the record contains some evidence to support a board's decision, there has been no abuse of discretion, and mandamus will not lie." *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646, ¶ 20; *Altman-Bates* at ¶ 22 (stating "[t]he board has not abused its discretion if there is 'some evidence' to support its determination").

{¶ 26} On appeal, this court reviews the trial court's decision to grant or deny a writ of mandamus for an abuse of discretion. *Altman-Bates* at ¶ 23, citing *State ex rel. Mun. Constr. Equip. Operators' Labor Council v. Cleveland*, 141 Ohio St.3d 113, 2014-Ohio-4364, ¶ 24.

## IV. Analysis

{¶ 27} Ewart's three assignments of error are interrelated, and we address them jointly. In her first assignment of error, Ewart argues the trial court erred in finding Dr. O'Brien's June 22, 2017 examination report constituted "some evidence" to support STRB's decision. In her second assignment of error, Ewart argues the trial court erred in finding Dr. O'Brien's examination report and the file review letters of Drs. Allen and Hutzler constituted "new evidence" to support a determination that Ewart is no longer disabled. In her third and final assignment of error, Ewart argues the trial court erred in finding the letters of Drs. Allen and Hutzler constitute independent medical examinations sufficient to support STRB's decision. Taken together, these three assignments of error stand for the proposition that the trial court erred in denying Ewart's requested writ of mandamus.

{¶ 28} As this court outlined in our decision in STRB's previous appeal in this case, through the enactment of R.C. Chapter 3307, the General Assembly established a retirement system for public school teachers with funds for retirement and other benefits, including the payment of disability benefits, vesting STRB with the management of the system. *Ewart* at ¶ 27, citing R.C. 3307.03. "Disability benefits are available for '[m]embers of STRS who are unable to perform their duties for at least 12 months from receipt of their completed application because of a physical or mental condition.' " *Id.*, quoting *State ex rel. Castle v. State Teachers Retirement Sys.*, 10th Dist. No. 15AP-845, 2016-Ohio-1245, ¶ 50, citing R.C. 3307.62(C).

{¶ 29} Here, STRB initially granted Ewart's application for disability retirement benefits in April 2015. The issue in the instant case, however, is not STRB's initial granting of disability retirement benefits but its subsequent decision in August 2017 to terminate those benefits. While R.C. 3307.62 governs the initial eligibility for disability benefits, a different standard applies to STRS's termination of disability benefits at a later time. *Ewart* at ¶ 28 (stating "[a]fter granting an application for benefits, STRS retains the ability to terminate the benefits at a later time"), citing R.C. 3307.48(C), and *Castle* at ¶ 51. In the previous appeal in this case, we outlined the statutory requirements applicable to STRB's subsequent termination of previously granted disability retirement benefits, stating:

> Pursuant to R.C. 3307.48(C), STRB may require any disability
> benefit recipient to submit to an annual medical examination

> by a physician selected by the board or may require additional examinations if the board's physician determines that additional information should be obtained. The examiner is charged with "report[ing] to [STRB] whether the disability benefit recipient is no longer incapable of resuming the service from which the recipient was found disabled." R.C. 3307.48(C). If the examiner determines the disability recipient is no longer incapable of resuming service, STRB "shall appoint a medical review board composed of at least three disinterested physicians to evaluate the examiner's report." R.C. 3307.48(C). The STRS medical review board must report its findings to the STRB, and, if the STRB concurs in a finding made by the medical review board that the disability recipient is no longer incapable, the board shall terminate the benefit. R.C. 3307.48(C).

*Ewart* at ¶ 28.

{¶ 30} We also set forth in our decision in the previous appeal of this case the evidentiary standard applicable to STRB's decision to terminate a disability benefit. Specifically, we stated, " '[t]he determination of whether a member is entitled to the continued receipt of disability retirement benefits * * * must be based on a medical examination and pertinent medical evidence.' " *Ewart* at ¶ 28, quoting *Castle* at ¶ 52. "In order to terminate a disability benefit, there must be new evidence in the record that a recipient is no longer incapable of resuming the service from which the recipient was found disabled." *Id.*, citing *State ex rel. Bryan v. State Teachers Retirement Sys. Bd. of Ohio*, 10th Dist. No. 15AP-1004, 2016-Ohio-5802, ¶ 18, citing *Castle* at ¶ 53.

{¶ 31} Through her three assignments of error, Ewart sets forth several arguments as to why the evidence STRB relied upon in terminating her disability retirement benefits was insufficient to satisfy the "some evidence" standard necessary for this court to conclude the trial court did not abuse its discretion in denying her requested writ of mandamus. We address each of these arguments in turn.

**A. Whether Dr. O'Brien's Report is Equivocal**

{¶ 32} Ewart first argues the trial court erred in concluding Dr. O'Brien's report could constitute "some evidence" to support termination of her disability retirement benefits because she asserts the report is equivocal and thus lacks probative value.

{¶ 33} "Under Ohio law, 'equivocal medical opinions are not evidence.' " *Bryan* at ¶ 32, quoting *State ex rel. Eberhardt v. Flxible Corp.*, 70 Ohio St.3d 649, 657 (1994). "In this respect, 'equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement.' " *Id.*, quoting *Eberhardt* at 657.

{¶ 34} Ewart argues Dr. O'Brien's report is equivocal because it is contradictory and ambiguous. Specifically, Ewart notes that Dr. O'Brien's report states that Ewart continues to suffer from chronic hoarseness that interferes with her ability to communicate. Despite that observation, Dr. O'Brien nonetheless opines that Ewart should not be considered unable to return to her former position as a middle school teacher. Additionally, Ewart points to Dr. O'Brien's answering "yes" on the form question of whether the applicant's "subjective complaints and symptoms correlate with the medical evidence." (Record of Proceedings at E2849-I83.) Ewart argues this is inconsistent with his answer on the same form that he does not consider Ewart to be medically incapacitated from the performance of her job duties as an eighth-grade science teacher. Essentially, Ewart argues that Dr. O'Brien's report must be equivocal because while it contained the same physical findings as reports by different doctors, he reaches a different conclusion as to whether Ewart's medical condition should lead to disability retirement benefits.

{¶ 35} We do not agree with Ewart's categorization of Dr. O'Brien's report as being equivocal. While his report and ultimate conclusions differ from some of the reports rendered by other physicians throughout the pendency of this case, Dr. O'Brien's report, itself, is not ambiguous or contradictory. Furthermore, the report and questionnaire, when read in their entirety, indicate that while Dr. O'Brien observed the same physical findings in his examination, he nonetheless reached a different conclusion than her treating physician, Dr. Bryson, about whether those physical findings would prevent Ewart from performing her job duties. Dr. O'Brien observed that although the laryngoscopy revealed a "[s]light glottic gap" of Ewart's right true vocal cord, he specifically noted that "her physical exam findings do not correlate well with the degree of impairment that she is experiencing." (Record of Proceedings at E2849-I78.) Dr. O'Brien's report reflects an acknowledgment that Ewart has some degree of impairment, but he concluded that impairment does not preclude her from working as a teacher.

{¶ 36} Thus, because we find Dr. O'Brien's report is not equivocal, the trial court did not abuse its discretion in refusing to disregard the report on that basis.

### B. Whether STRB Relied on "New Evidence" Under R.C. 3307.48(C)

{¶ 37} Ewart next argues that even if Dr. O'Brien's report is not equivocal, the trial court nonetheless abused its discretion in denying her requested writ of mandamus because STRB did not rely on "new evidence" to satisfy the evidentiary requirements of R.C. 3307.48(C) necessary to terminate her previously approved disability retirement benefits.

{¶ 38} The version of R.C. 3307.48(C) in effect at the time STRB took action to terminate Ewart's disability benefits provides, in pertinent part:

> [STRB] shall require any disability benefit recipient to submit to an annual medical examination by a physician selected by the board. * * *
>
> After the examination, the examiner shall report and certify to the board whether the disability benefit recipient is no longer physically and mentally incapable of resuming the service from which the recipient was found disabled.

Former R.C. 3307.48(C) (effective Apr. 6, 2017). Ewart construes this language, in conjunction with this court's previous holding that termination of disability benefits must be based on new evidence, to mean that STRB cannot take action to terminate her disability benefits without new medical evidence that her condition has changed such that she is no longer physically incapable of resuming her job duties. Stated another way, Ewart would have us conclude that because Dr. O'Brien's report did not document any change in her condition from what the previous examining physicians had observed, STRB could not rely on Dr. O'Brien's opinion that her physical condition does not render her unable to perform her job duties. Ewart asks us to conclude that "new evidence" must mean more than a new report from an examining physician; in her view, it must mean new findings within the report. Thus, we must determine whether a different opinion from a physician on whether a disability recipient can perform the duties of her job constitutes "new evidence" in the context of former R.C. 3307.48(C).

{¶ 39} This court has previously addressed the issue of whether STRB can terminate disability benefits based on the changing opinion of the examining physician. In *State ex rel. Riddell v. State Teachers Retirement Bd.*, 10th Dist. No. 13AP-660, 2014-Ohio-1646,

relator, a third-grade teacher, filed an application for disability retirement benefits with STRS based on severe migraine headaches. STRB initially granted relator's application for disability retirement benefits in 2003 after a neurologist examined relator and found that while relator had no objective neurological abnormality or disability that would prevent her from working and that her pain could not be objectified in any physical findings, he nonetheless recommended that relator's application for disability retirement benefits be approved. After several reevaluations of relator's disability retirement benefits, STRB asked the neurologist to reexamine relator in 2009. At that time, the neurologist issued a new report reiterating that he could not find any measurable, objective basis by which relator could be considered disabled, and he ultimately recommended that relator not qualify for disability retirement benefits despite her failure to meet the minimum attendance requirements of her school district due to her chronic headaches. Relator administratively appealed, and the neurologist issued another report stating that his opinion had not changed and that relator is not disabled from teaching. Relator then filed a petition for a writ of mandamus, which the trial court denied.

{¶ 40} On appeal to this court, relator's single assignment of error was that the trial court abused its discretion in finding that STRB did not abuse its discretion in terminating her disability retirement benefits. We found the sole issue to be whether the neurologist's reports provided STRB with some evidence to enter its order terminating relator's disability retirement benefits. *Riddell* at ¶ 23. With that framework, we noted that "the Supreme Court of Ohio has stated that a disability benefit may be terminated 'when the retirement board determines, based on a medical examination, that the recipient is capable of resuming service similar to that from which he was found disabled.' " (Internal quotations omitted.) *Riddell* at ¶ 24, quoting *State ex rel. Hulls v. State Teachers Retirement Bd. of Ohio*, 113 Ohio St.3d 438, 2007-Ohio-2337, ¶ 26 (internal quotations omitted). We then concluded the trial court did not abuse its discretion in denying relator's requested writ, as the reports of the neurologist constituted some evidence to support STRB's decision to terminate relator's benefits.

{¶ 41} Both *Riddell* and *Hulls*, the Supreme Court case on which *Riddell* relies, involved the same statutory language at issue here.[1]  In *Riddell*, we concluded that STRB could rely on the neurologist's opinion even though he did not provide consistent conclusions throughout the course of his examinations of relator.  *Riddell* at ¶ 23 (noting "a board is generally permitted to accept a doctor's findings without accepting his conclusions"), citing *State ex rel. Kolcinko v. Ohio Police & Fire Pension Fund*, 131 Ohio St.3d 111, 2012-Ohio-46, ¶ 9, and *State ex rel. Ackerman v. State Teachers Retirement Bd.*, 117 Ohio St.3d 268, 2008-Ohio-863, ¶ 22.  Specifically, the neurologist in *Riddell* first concluded that relator should be granted disability retirement benefits and then, several years later following reexamination, concluded that relator should not be considered disabled, explaining that while relator's pain from her headaches may render her unable to perform her job duties, she was not physically disabled from doing so.  Importantly, the neurologist's objective observations remained consistent throughout the proceedings: he maintained that there were no objective physical or neurological findings that would prevent her from working.  *Riddell* at ¶ 27.  We determined that it is ultimately STRB, not the neurologist, that made the decision that relator was capable of returning to work, as "STRB 'is deemed to know what a teaching job entails and whether the recipient is disabled from it.' " *Id.* at ¶ 29, quoting *State ex rel. Kelly v. State Teachers Retirement Sys. of Ohio*, 10th Dist. No. 11AP-527, 2012-Ohio-4613, ¶ 9 (noting that "it is the board, not a physician, that ultimately makes [the] decision" of whether a disability recipient is no longer physically or mentally incapable of resuming his or her job duties), citing former R.C. 3307.62(F) (now codified at R.C. 3307.48).

{¶ 42} Here, although Dr. O'Brien was not the original examining physician appointed by STRB, Ewart's argument is the same as relator's in *Riddell*: that because the objective observations from the examining physician had not demonstrated a change in her physical condition, STRB should not be able to rely on a physician's report with a different ultimate opinion on whether that condition renders her able or unable to resume her job duties in order to terminate her disability retirement benefits.  However, as this court

---

[1] *Riddell* and *Hulls* both involve former R.C. 3307.64, which has since been renumbered to R.C. 3307.48 and contained the identical text, in the pertinent provisions, to the version of R.C. 3307.48(C) at issue here.

explained in *Riddell*, a decision by STRB to terminate disability retirement benefits need not be supported by evidence of "a positive change in her condition to warrant a determination that she was capable of returning to work," noting this court has previously rejected similar arguments. *Riddell* at ¶ 30, citing *State ex rel. Mullenax v. State Teachers Retirement Sys. Bd.*, 10th Dist. No. 08AP-116, 2008-Ohio-4261, ¶ 17, and *State ex rel. Garrett v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 11AP-1020, 2012-Ohio-4504, ¶ 3-5, 44. Instead, we note that the statutory scheme specifically contemplates that a disability retirement benefit recipient will be subject to reexamination, and it is ultimately for STRB to determine, based on the report from the reexamination, whether to terminate the disability benefit. Former R.C. 3307.48(C); *Hulls* at ¶ 40 (additionally noting that the statutory scheme does not preclude STRB from ordering more than one medical examination of a disability benefit recipient within the same year).

{¶ 43} In *Riddell*, the same physician, upon reexamination, changed his opinion as to whether relator was able to perform the duties of her job. We found the physician's report following reexamination to constitute some evidence to support STRB's decision to terminate relator's disability retirement benefits. Here, a new physician performed a new evaluation of Ewart, and issued a new report that STRB then relied upon in making the ultimate determination that Ewart should no longer be deemed incapable of returning to work. In light of *Riddell* and the cases it relies upon, we conclude Dr. O'Brien's report constitutes new evidence under former R.C. 3307.48(C) upon which STRB could base its decision to terminate Ewart's disability retirement benefits.

{¶ 44} Because Dr. O'Brien's report constitutes new evidence within the meaning of our previous decision in *Ewart* and within the meaning of former R.C. 3307.48(C), and because the report contained Dr. O'Brien's opinion that Ewart was not medically incapacitated and was able to perform her job duties, STRB thus had some evidence to support its decision to terminate Ewart's disability retirement benefits. Accordingly, the trial court did not abuse its discretion in determining there was some evidence to support STRB's decision and denying Ewart's requested writ of mandamus.

### C. Whether the Letters from Drs. Allen and Hutzler Constitute Some Evidence

{¶ 45} Finally, Ewart argues the trial court abused its discretion in determining the letters from Drs. Allen and Hutzler constitute some evidence to satisfy the requirements of former R.C. 3307.48. Specifically, Ewart argues the letters of Drs. Allen and Hutzler cannot satisfy the requirements of former R.C. 3307.48(C) both because their letters do not contain new evidence and because they are members of the STRS medical review board and not independent medical examiners. However, we have already determined that Dr. O'Brien's report is not equivocal and that the trial court did not abuse its discretion in determining that Dr. O'Brien's report constitutes some evidence for STRB to rely upon in deciding to terminate Ewart's disability retirement benefits. As Dr. O'Brien's report, alone, constitutes some evidence to support STRB's decision, we decline to consider Ewart's arguments related to the letters of Drs. Allen and Hutzler as those arguments are now moot.

{¶ 46} In summation, because the trial court did not abuse its discretion in determining Dr. O'Brien's report was not equivocal and in finding Dr. O'Brien's report constituted some evidence to support STRB's decision, we overrule Ewart's first assignment of error and the portion of her second assignment of error related to Dr. O'Brien's report, rendering moot the portion of her second assignment of error related to the letters of Drs. Allen and Hutzler and the entirety of her third assignment of error.

## V. Disposition

{¶ 47} Based on the foregoing reasons, the trial court did not abuse its discretion in denying Ewart's requested writ of mandamus. The trial court did not abuse its discretion in determining Dr. O'Brien's report was not equivocal and constituted some evidence to support STRB's decision terminating Ewart's disability retirement benefits. Having overruled Ewart's first assignment of error and the portion of her second assignment of error related to Dr. O'Brien's report, rendering moot the remainder of her second assignment of error and her third assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER, P.J., and BROWN, J., concur.